THE PEOPLE v. JAMES GIBSON.

*Burglary—Separate transactions—Impeachment.*

1. An interval between two successive entrances of the same house on the same night by the same burglar does not prevent proof of what took place at the second visit in a prosecution for the crime; the two breakings constitute one continuous burglary, even though it began to be light before the burglar left the house the second time. But even if the second entrance were a separate transaction the fact could be shown by way of accounting for the whereabouts of respondent during the night.

2. A respondent swearing to an alibi was cross-examined as to what he saw of an alleged procession in the town where he claimed to have been. *Held* proper to show by others what the facts were as to the procession as bearing on the truth of his statements.

3. A judge's favorable comments upon the character of witnesses, though scarcely proper, are not clearly erroneous if borne out by undisputed evidence.

Error to Saginaw. (Gage, J.) October 22.—November 4.

Information for burglary. Respondent brings error. Affirmed.

Attorney General *Moses Taggart* for the People. Though burglary is an offense that must be committed in the darkness of night (Bish. Stat. Cr. § 276; Rosc. Crim. Ev. 345; 1 Hale P. C. 560; *Rex v. Tandy* 1 C. & P. 297; *People v. Griffin* 19 Cal. 578; *State v. Bancroft* 10 N. H. 105), and the breaking must be done by night, the entire crime is not confined to one night: Tiff. Cr. Law 617; 2 Whart. Cr. L.

§ 1592; anything connected with the main crime is res gestæ to prove it: 1 Greenl. Ev. § 108 ; Whart. Am. Cr. L. § 828; Bish. Cr. Pro. § 493 ; *People v. Mead* 50 Mich. 230; *People v. Marble* 38 Mich. 121 ; *People v. Doyle* 21 Mich. 221 ; *Com. v. Briggs* 7 Pick. 177 ; *Weed v. People* 56 N. Y. 628; *Coleman v. People* 58 N. Y. 555 ; *Heath v. Com.* 1 Rob. (Va.) 735 ; *Burr v. Com.* 4 Grat. 534; *Haskins v. People* 16 N. Y. 344.

*John Hurst* and *Trask, Grout & Smith* for respondent appellant.

MORSE, C. J.   The defendant was convicted of burglary in the circuit court for the county of Saginaw.   The evidence on the part of the prosecution, being principally that of one Alexander Frey, corroborated by his wife, was to the effect that on the night of July 4th, 1883, the defendant proposed to said Frey, at whose house he was stopping, to go to the dwelling-house of one John Byrne, in Lakefield, Saginaw county, and go through it ; that about ten o'clock in the evening they proceeded to Byrne's house, and defendant took out a pane of glass and entered, and handed out to Frey about thirty pounds of pork, which was taken to Frey's house; that between three and four o'clock in the morning defendant proposed to go and take the remainder of the property of Byrne at his house, and by threats and commands forced Frey, who was under great fear, to go with him ; that when he took the pork the first time he put the pane of glass back.   When they arrived at the house the second time he took out the same pane again and entered the house as before, taking out and carrying away a large number of articles.   Frey testified that when they took the things this last time it was daylight. At the close of Frey's testimony the defendant's counsel moved to strike out of the case all the evidence relating to the last breaking, as it was shown to be a separate and distinct offense, and also for the reason that it occurred by daylight. The court denied the motion, which is assigned as error.   The judge also instructed the jury in this connection : " I charge you that if this house was broken and entered in the night-time by some person, and with intent to steal, and a small portion

of the property carried away, and then the party returned during the night-time and abstracted other portions of the property, that it was a continuance of the burglary;" and then proceeded to give a true definition of what was meant by night-time in the law; which portion of the charge above quoted was excepted to by defendant's counsel.

We think the two acts of taking property out of the house, and entering the house for that purpose, were in law but one transaction. It took place in one evening, and the mere fact that there was an interval between the taking of the pork and the other articles would not constitute two distinct and separate offenses. It would make no difference if it was daylight when the last things were taken out; for if the first breaking was in the night-time, and the second entry also in the night-time, the taking out of the things after daylight would not change the character of the entry. And taking into consideration the evidence of Mrs. Frey, there was sufficient proof to go to the jury that the "daylight" referred to by Mr. Frey was not the daylight of the law,—the light caused by the coming or rising sun. Even if the last breaking could be regarded as an offense separate and distinct from the first, it was, nevertheless, competent evidence. The whereabouts of the accused the whole of this evening was a legitimate subject of inquiry, especially when connected so closely as to time and place as these transactions were,—in fact, a continuous transaction passing from the house of Frey to that of Byrne and back, though there was a rest between the two trips, both of which had the same object and were taken in the same company. It was in fact and in law, however, one continuous burglary. 2 Whart. Crim. Law §§ 1592, 1593; *People v. Mead* 50·Mich. 228.

The defendant was sworn as a witness in his own behalf, and testified that he went to Saginaw City, a distance of twenty miles, on the morning of the 4th of July, and missed the train by which he intended returning home; that he stayed and witnessed the fire-works until near midnight, and then walked home, reaching there about half-past five or six o'clock on the morning of July 5th; that he was not at Byrne's

house at either time stated by Frey, and had no part in the burglary. On cross-examination he was asked if he saw the procession at Saginaw City, and replied that he did, but took but little notice of it. When asked to describe the procession he said he saw a German company of men and another company, but could not tell how they were dressed. Thought he saw a wagon fixed up with a lot of little children in it, but could describe nothing else that he saw.

In rebuttal, Albert Trask and other witnesses were permitted, under objection by defendant's counsel, to describe the procession at Saginaw City on that day as they saw it. This is also assigned as error. We can see no objection to the admission of this testimony. If the defendant had testified to seeing a procession there as he did, and there had been no procession, it would have been competent for the prosecution to show this in rebuttal; and it was equally competent, in our opinion, to show what the procession was composed of, as bearing more or less upon the truth of his statement that he was there and saw it. If the description of other witnesses agreed with defendant's it would certainly do him no harm, and if it disagreed radically, it would be proper for the jury to consider it as a circumstance bearing upon the question whether he saw it as he had testified. It was offered to show that a large number of societies and organizations, as well as wagons and carriages, were in the procession, and to show that if defendant had been in the city at the time he claimed he was and saw the procession, he could have given a better description of it. It was competent for this purpose. If it fell short of showing this, as defendant's counsel claim, we fail to see how it could have hurt defendant's cause.

In his charge to the jury the court said, speaking of Mrs. Frey as a witness: "The character of the witness is important to be taken into consideration in determining the truth of the testimony. So far as the testimony of Mrs. Frey is concerned, she is the mother of four children. There appears nothing against her character in this case except the statement of the defendant. Whatever may appear against her in this

case, so far as her character is concerned, are matters that the defendant himself has brought before the court and jury."

In speaking in the same connection of the evidence of Frey the court also said : "Now, with Mr. Frey, the other witness on the stand, there is nothing before the jury that I remember of, so far as his character or conduct heretofore is concerned, except that he is a man somewhat shiftless, and has not succeeded in making any property. I don't know that that can be laid up against him ; but some of the testimony shows that he is a shiftless man to some extent.    Excepting that, and his own statement that he was an accomplice in this crime, is about all we have of the history of Mr. Frey. He appears to be a man who is at work now for Mr. Merrill, and has been at work there since.    We know nothing against him, as I have stated."

Both of these statements of the court were excepted to. While it would have been more in accordance with correct practice for the court to have omitted these remarks, yet from the record there is no dispute, and can be none, but they were both correct statements as to the evidence affecting the character of the two witnesses, and we are not able to say that the comments of the circuit judge were such as to call for a reversal of the judgment upon that ground alone.

The judgment of the court below is affirmed.

The other Justices concurred.