NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11634

COMMONWEALTH  vs.  MAURICE BOLDEN.


Hampden.     October 9, 2014. - December 17, 2014.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Burglary.  Breaking and Entering.  Constitutional Law, Double
    jeopardy.  Practice, Criminal, Double jeopardy, Duplicative
    convictions, Amendment of indictment or complaint,
    Postconviction relief.



Indictments found and returned in the Superior Court
Department on July 15, 1993.

A motion to correct illegal sentences, filed on February 7,
2011, was heard by Bertha D. Josephson, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


William W. Adams for the defendant.
Dianne M. Dillon, Assistant District Attorney, for the
Commonwealth.


CORDY, J.  In the summer of 1993, the defendant broke into

several homes in the Springfield metropolitan area, attacking

the inhabitants and carrying off their possessions.  At trial,

he was convicted on seventeen indictments, including three counts of aggravated burglary that form the basis of this appeal.  Two of the three counts arose from the burglary of a dwelling in Agawam involving two assaults therein (Agawam indictments).  The third count arose from a break into a home in Springfield and an assault on one of its inhabitants (Springfield indictment).

The convictions on those indictments were affirmed.  42 Mass. App. Ct. 1105 (1997).  The defendant filed in the Superior Court a motion for postconviction relief seeking to correct illegal sentences, contending that the two Agawam indictments were duplicative and that an amendment to the Springfield indictment as to the person assaulted rendered that conviction unconstitutional, in violation of art. 12 of the Declaration of Rights of the Massachusetts Constitution, under the rule of Commonwealth v. Snow, 269 Mass. 598 (1930).  A judge denied the motion; the Appeals Court affirmed the denial in a memorandum and order pursuant to its rule 1:28, 84 Mass. App. Ct. 1106 (2013), and we granted the defendant's application for further appellate review.

With respect to the Agawam indictments, we agree with the defendant that G. L c. 266, § 14 (§ 14), permits only one burglary conviction per dwelling and that the conviction on the duplicative indictment must be vacated.  With respect to the

Springfield indictment, we conclude that because § 14 permits only a single conviction per dwelling, a conviction on the original Springfield indictment would have precluded a conviction on the amended one. Therefore, the name of the person assaulted was not an essential element and the conviction on the amended Springfield indictment did not violate the rule set forth in the Snow case. Accordingly, we reverse in part and affirm in part the order denying the defendant's motion for postconviction relief.

1. Background. The following facts are drawn from testimony before the grand jury and are supplemented by testimony at trial. In the middle of the night on June 29, 1993, the defendant opened the unlocked rear door to a house on Winthrop Street in Springfield, entered the dwelling, pilfered a key to a 1989 Mercury Merkur automobile parked in the driveway, and -- while in the dwelling attempting to abscond with a television -- was confronted by one of the occupants, Sandra Goodrow. The defendant struck Sandra in the head, fled the dwelling, and escaped in the Merkur. Carmella Goodrow, her mother-in-law and owner of the dwelling, reported the break-in and assault to the Springfield police.

Late in the evening on July 2, 1993, the defendant drove the Merkur to a street near the home of Stanley and Alice Glogowski in Agawam. The defendant walked up to their home,

opened a rear door and entered the dwelling. Stanley heard a noise, commenced an investigation, and soon discovered a two-by-four piece of lumber lying by the unlocked rear door. After locking the door, he retrieved the lumber and carried it down to the cellar. The defendant, lying in wait, confiscated the lumber and struck Stanley in the head and back.

Alice, on hearing the commotion, went to the top of the cellar stairs, where she observed the defendant standing over Stanley, who was unconscious and lying on the floor. This prompted her to shut the door to the cellar and place the weight of her body against it. The defendant forced the door open and grabbed Alice, striking her in the face and sending her tumbling down the stairs, before kicking open and escaping through the rear door from which he had entered. Stanley called the police, who, on arrival, found the blood-spattered piece of lumber impressed with the defendant's fingerprint.

The defendant was apprehended by the Springfield police and confessed to the break-ins. A grand jury convened in Hampden County and heard excerpts from the defendant's statement to the police, as well as the testimony of a Springfield police officer that: "On 6/29/93 Carmello [sic] Goodrow of . . . Winthrop Street reported that her home had been broken into and that during the break the subject had slapped her across the head

before fleeing the house . . . ."  The grand jury returned the Springfield indictment, which provided, in pertinent part:

> "MAURICE BOLDEN . . . did break and enter the dwelling house in the nighttime of Carmella Goodrow . . . with intent therein to commit a felony, or after having entered with such intent, did break such dwelling house in the nighttime, the said Carmella Goodrow being then lawfully therein, and the said Maurice Bolden did make an actual assault on said Carmella Goodrow, a person lawfully therein."

The grand jury also returned the two Agawam indictments, premising one on the armed assault of Stanley and the other on the armed assault of Alice.

Prior to trial, the Commonwealth filed a motion to amend the Springfield indictment to change the name of the assault victim from Carmella Goodrow to Sandra Goodrow.  The defendant consented to the amendment, the judge allowed the motion, and the indictment was duly amended.  The defendant was tried by jury on the Springfield and Agawam indictments, each resulting in judgments of conviction.  He was sentenced on the Agawam indictments to two concurrent life terms in the State prison and on the Springfield indictment to a minimum term of ten years in the State prison.  The Appeals Court affirmed the convictions, 42 Mass. App. Ct. at 1105, and we denied the defendant's application for further appellate review.

The defendant filed a motion in the Superior Court pursuant to Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501

(2001), seeking to correct certain illegal sentences, which motion was denied as to the Springfield indictment (indictment no. 93-1183) and Agawam indictments (indictment nos. 93-1181 and 93-1182). The Appeals Court affirmed, 84 Mass. App. Ct. at 1106, and we initially denied the defendant's application for further appellate review. 466 Mass. 1108 (2013). On reconsideration, however, we granted the application. 467 Mass. 1101 (2014).

2. <u>Discussion</u>. a. <u>The Agawam indictments</u>. "Under the double jeopardy clause of the Fifth Amendment to the United States Constitution and Massachusetts common law, no person may be convicted twice for the same offense." <u>Commonwealth</u> v. <u>Horne</u>, 466 Mass. 440, 449 (2013). Where, as here, a defendant is convicted twice under the same statute, we endeavor to "examine the statute and ask what 'unit of prosecution' was intended by the Legislature as the punishable act." <u>Id</u>. at 449-450, quoting <u>Commonwealth</u> v. <u>Rabb</u>, 431 Mass. 123, 128 (2000). This inquiry is informed by the language and purpose of the statute, as well as the rule of lenity, which requires us to resolve any ambiguities in the defendant's favor. <u>Horne</u>, <u>supra</u> at 450.

The crime of aggravated burglary is defined in G. L. c. 266, § 14. In identifying the intended unit of prosecution for violations of § 14, we do not write on a pristine page. The

Appeals Court thoroughly analyzed this issue in Commonwealth v. Gordon, 42 Mass. App. Ct. 601 (1997).  See Commonwealth v. Cruz, 430 Mass. 182, 196 (1999).  In that case, the defendant broke and then entered a dwelling, threatening the lawful inhabitants with a sawed-off shotgun.  Gordon, supra at 601-602.  The Commonwealth obtained three convictions under § 14, each premised on indictments that were identical apart from the names of the assault victims.  As in the present case, the defendant argued that the convictions were duplicative.  Id. at 602.

The Appeals Court agreed, framing its analysis around the two disjunctive clauses that comprise the first paragraph of § 14.[1]  Gordon, 42 Mass. App. Ct. at 603-605.  The first clause embraces the predicate offense of common-law burglary, the elements being met by one who (i) "breaks and enters a dwelling house in the night time, with intent to commit a felony," or (ii) "after having entered with such intent, breaks such dwelling house in the night time."  G. L. c. 266, § 14; see Commonwealth v. Hope, 22 Pick. 1, 4-5 (1839), quoting 1 Hale, Pleas of the Crown 559 (1800) ("Lord Hale says . . . 'to make up

---

[1] "Whoever breaks and enters a dwelling house in the night time, with intent to commit a felony, or whoever, after having entered with such intent, breaks such dwelling house in the night time, any person being then lawfully therein, and the offender being armed with a dangerous weapon at the time of such breaking or entry, or so arming himself in such house, or making an actual assault on a person lawfully therein, shall be punished by imprisonment in the state prison for life or for any term of not less than ten years."  G. L. c. 266, § 14.

burglary, it must not be only to break and enter a house in the night time, but either a felony must be committed in the house, or it must be to the intent to commit a felony'").[2]

The second clause embraces the various methods by which common-law burglary may be aggravated into a violation of § 14: (i) "any person being then lawfully therein, and the offender being armed with a dangerous weapon at the time of such breaking or entry," or (ii) "so arming himself in such house," or (iii) "making an actual assault on a person lawfully therein."  G. L. c. 266, § 14.  The Appeals Court reasoned that "when viewed from the perspective that the assault aggravates the burglary, there can be only one conviction under G. L. c. 266, § 14, for armed burglary, regardless of how many people the perpetrator assaults once inside the dwelling."  Gordon, 42 Mass. App. Ct. at 605.

The Commonwealth attempts to distinguish the Gordon case on its facts, pointing out that the present case involved separate

_____

[2] Although deeply rooted in the common law, burglary has been punished by statute in Massachusetts since at least 1642. Commonwealth v. Hope, 22 Pick. 1, 9 (1839).  At that time, the General Court pronounced:  "if any person shall commit Burglary: by breaking up any dwelling house, . . . such person so offending shall for the first offence, be branded on the forehead, with the letter (B) And if he shall offend in the same kind, the second time, he shall be branded as before & also be severely whipped; and if he shall fall into the like offence, the third time, he shall be put to death as being incorrigible." General Laws of Massachusetts Colony, at 7 (1660), reprinted in Colonial Laws of Massachusetts 1660-1672 (1889).  The present iteration, at G. L. c. 266, § 15, continues to track the common-law elements of the crime, while scaling back the penal consequences considerably.

and discrete criminal acts underlying each conviction.  Indeed, here, the defendant first broke into the dwelling and assaulted Stanley; and then broke from the cellar into the interior of the dwelling and assaulted Alice.  We think the Commonwealth draws a distinction without a difference.

The language of § 14 regarding an intruder who, "after having entered with such intent [to commit a felony] breaks such dwelling house in the night time," is clearly a reference to one who first enters the home through an open door or window and then commits a proper "break" once inside the dwelling.  This alternate element tracks the traditional rule that one who simply enters through the open door or window of a home commits no burglary absent proof of some interior break.  See E. Coke, The Third Part of the Institutes of the Laws of England 63-65 (E. and R. Brooke ed. 1797) ("So it is if the window of the house be open, and a thiefe with a hook or other engine draweth out some of the goods of the owner:  this is no burglary because there is no actual breaking of the house").  See also State v. Wilson, 1 N.J.L. 439, 441 (1793) ("If a man lifts up the latch of an outward door, or if an outward door, being open, a thief enters and unlatches or unlocks a chamber door, with a felonious intent, in either case his act comes up to the idea affixed by the law to the word breaking, so as to constitute the crime of burglary").  Our review of the common law suggests that multiple

breaks of a single dwelling did not create distinct, punishable burglaries, but "were in law but one transaction." People v. Gibson, 25 N.W. 316, 317 (Mich. 1885). Finding no intent by the Legislature to depart from this precept, we conclude that once a dwelling is "broken," any subsequent breaks occurring therein -- reasonably close in time and purpose -- are but a continuation of the offense and thus insufficient to support separate convictions under § 14. See Commonwealth v. Burke, 392 Mass. 688, 690 (1984), quoting Commonwealth v. Knapp, 9 Pick. 495, 514 (1830) ("As has long been recognized, a statute should not be interpreted as being at odds with the common law 'unless the intent to alter it is clearly expressed'"). See generally Horne, 466 Mass. at 450 (describing continuous offense doctrine).

Alternatively, the Commonwealth asks us to overrule the Gordon case and adopt a victim-based unit of prosecution. We decline that invitation. In addition to the historical accuracy and commonsense appeal of the Gordon court's analysis, we are persuaded by the Legislature's placement of § 14 in a chapter devoted to "Crimes against Property." That placement is in contrast to the placement of the similar home invasion statute, G. L. c. 265, § 18C (entering dwelling place armed and using force or threatening same against any person therein), in a chapter devoted to "Crimes against the Person." See

Commonwealth v. Levia, 385 Mass. 345, 348 (1982). Whereas the language and placement of the latter supports separate prosecutions for each victim, the language and placement of the former does not. Compare Commonwealth v. Doucette, 430 Mass. 461, 471 (1999) (two counts of armed home invasion under G. L. c. 265, § 18C, not duplicative of each other), with Gordon, 42 Mass. App. Ct. at 605.

Once a person has broken and entered any part of the dwelling, at night, and with intent to commit a felony therein, the predicate offense of burglary as to that dwelling is complete.[3] Because arming oneself with a dangerous weapon and assaulting the inhabitants of that dwelling merely aggravate that singular predicate offense, the Commonwealth may not aggregate such actions into multiple units of prosecution under § 14. See Commonwealth v. Hogan, 249 Mass. 555, 564 (1924) ("The offence is an offence which may be committed in either of the acts charged, and whether singly or together subjects the defendant on conviction to one punishment"). Notwithstanding this limitation, the Commonwealth was free to -- and, in fact, did -- prosecute the defendant for other crimes committed

---

[3] We need not address the question posed by the defendant whether breaking out for purposes of escape is sufficient to constitute the "break" required under G. L. c. 266, § 14. The Commonwealth does not allege such a construction, nor is such a construction necessary to the Commonwealth's case. The evidence is ample that the defendant committed the required break by opening the rear door to the dwelling and thereupon entering it.

against the inhabitants of the dwelling.  See, e.g., G. L.
c. 265, § 18 (a) (armed assault of person sixty years of age or
older with intent to rob).

There is no question that, on the evening of July 2, 1993,
the defendant committed the predicate offense of burglary in
Agawam; nor is there any question that the defendant aggravated
that offense by arming himself with a dangerous weapon and
assaulting the lawful inhabitants of the burgled dwelling.
However, the defendant cannot stand twice convicted for this
singular violation of § 14.[4]  Because each conviction carried
identical, concurrent life sentences, there is little profit in
a remand.  Contrast Commonwealth v. Rivas, 466 Mass. 184, 190-
192 & n.9 (2013).  The judgment of conviction on indictment no.
93-1182 is vacated, the verdict is set aside, and the indictment
is dismissed.

---

[4] We also reject the Commonwealth's direct estoppel and
waiver arguments.  The defendant raised the duplicative
conviction issue in his direct appeal and was entitled to the
benefit of the decision in Commonwealth v. Gordon, 42 Mass. App.
Ct. 601 (1997), which was issued during the pendency of his
initial application for further appellate review.  To the extent
the defendant failed to raise this argument in his initial
motions for postconviction relief, we review for a substantial
risk of a miscarriage of justice.  Commonwealth v. Azar, 435
Mass. 675, 675-676 (2002), S.C., 444 Mass. 72 (2005).  It is
well established that duplicative convictions pose such a risk,
even where the punishments are imposed concurrently.
Commonwealth v. Jones, 382 Mass. 387, 395-396 (1981).
Accordingly, there is no procedural bar to the relief sought by
the defendant.  See Commonwealth v. Stewart, 375 Mass. 380, 393
(1978); Gallinaro v. Commonwealth, 362 Mass. 728, 737 (1973).

b. <u>The Springfield indictment</u>. The defendant next challenges the amendment of the Springfield indictment, hearkening back to our pronouncement in the case of <u>Commonwealth v. Blood</u>, 4 Gray 31, 32 (1855):

> "Nothing can be more clear than the duty of the Commonwealth to prove the identity of the offence charged in a complaint or indictment, with that on which it seeks to convict the party charged before the jury of trials. The fundamental principles of our government require this as an essential safeguard to the rights and liberty of the citizen. If it were not so, the constitutional privilege of a party, before he is held to answer to an offence, to have it 'fully and plainly, substantially and formally described to him,' and to be secure from arrest until 'the cause or foundation of the warrant be previously supported by oath or affirmation,' might be violated at the pleasure of prosecutors."

We think that the concerns articulated in the <u>Blood</u> case, since refined through the development of our statutory and common law, have been satisfied in this case.

One of those refinements occurred by way of the Legislature's enactment of St. 1926, c. 227, providing that: "Upon motion of the district attorney or prosecuting officer, the court may order the complaint or indictment amended in relation to allegations or particulars as to which the defendant would not be prejudiced in his defence."[5] The breadth and

---

[5] The substance of this statute, codified at G. L. c. 277, § 35A, and repealed by St. 1979, c. 344, § 35, now applies in broader terms by way of Mass. R. Crim. P. 4 (d), 378 Mass. 849 (1979): "Upon his own motion or the written motion of either party, a judge may allow amendment of the form of a complaint or

constitutionality of this enactment were tested in Commonwealth v. Snow, 269 Mass. 598 (1930), a case on which the defendant leans heavily.

The crime charged in the Snow case was extortion, carried out by a threat against the person and property of one Nora Downs. Id. at 599. The question posed was whether the grand jury's indictment could be modified, consistent with art. 12, to premise the extortion on a threat against the safety of Nora Downs's child. Snow, 269 Mass. at 604-605. We observed that an indictment may be properly amended only in "matters of form and those not essential to the description of the crime charged." Id. at 606. The materiality of the amendment, in turn, depended on "whether judgment of conviction or acquittal on the indictment as drawn would be a bar to a new indictment drawn in the form in which it stood after the amendment." Id. at 609-610. Concluding that a judgment on the original indictment would not have raised such a bar, we reversed the allowance of the amendment. Id. at 610.

Although we agree that the Snow case is controlling here, that will be cold comfort to the defendant. As we explain today, § 14 may support only one conviction per burglary. Applying the test set forth in the Snow case, it is plain that a

indictment if such amendment would not prejudice the defendant or the Commonwealth."

judgment of conviction on the indictment as originally drawn would bar a new indictment drawn in its amended form, as each indictment was premised on the same burglary.  The name of the assault victim was, therefore, not an essential element to the crime charged in this case.  It follows, therefore, that the change was one of form rather than substance, and we detect no constitutional error in the conviction on the amended Springfield indictment.[6]

Absent such constitutional concerns, a judge may amend an indictment on the motion of the Commonwealth so long as it does not prejudice the defendant.  Mass. R. Crim. P. 4 (d), 378 Mass. 849 (1979).  Here, in light of the defendant's statement to the police and his consent to the pretrial amendment, he suffered no prejudice.  Commonwealth v. Miranda, 441 Mass. 783, 789-790 (2004) (no prejudice where defendant was fully informed of

---

[6] The amendment did not materially change the work of the grand jury.  See Commonwealth v. Benjamin, 358 Mass. 672, 679-680 (1971).  Properly contextualized, the reasonable inference flowing from the grand jury testimony was that the defendant struck the woman he encountered, who, regardless of the name ascribed to her, appeared to be a lawful inhabitant of the dwelling.  Where, as here, the amended indictment charges the same crime as the original indictment, and the crime described to both the grand jury and the trial jury is the same in all material respects, there is no interference with the art. 12 guaranty to an indictment by grand jury.  See, e.g., Commonwealth v. Roby, 462 Mass. 398, 405 (2012) (nonmaterial variance based on trial evidence "did not materially change the work of the grand jury"); Campagna v. Commonwealth, 454 Mass. 1006, 1008 (2009) ("there is no confusion about the conduct underlying the indictments").

nature of charge and assented to amendment).  Accordingly, the
Commonwealth's motion was properly allowed and the defendant is
not entitled to relief from the judgment of conviction on
indictment no. 93-1183.

3.  Conclusion.  The order denying the defendant's motion
to correct illegal sentences is affirmed as to indictment nos.
93-1181 and 93-1183, and reversed as to indictment no. 93-1182.

So ordered.