COMMONWEALTH VS. GENE A. JACKSON.

No. 10-P-116.

Middlesex. January 3, 2011. - September 29, 2011.

Present: KANTROWITZ, KATZMANN, & MEADE, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Assault and Battery. Practice, Criminal, Duplicative convictions, Sentence.*

At a jury-waived criminal trial, the defendant's conviction of assault and battery was not duplicative of his conviction of assault and battery with a dangerous weapon, where the judge could have found that two separate acts occurred. [529-530]

A District Court judge did not err in revising and revoking a criminal sentence imposed ten days earlier, where the defendant, essentially contemporaneously with the announcement of the original sentencing structure (which incorporated a shorter period of incarceration coupled with a probationary component), had rejected the probationary term, thereby upending the premise of that sentencing structure that he was amenable to rehabilitation and rendering the sentence subject to revision and revocation under Mass. R.Crim.P. 29(a). [530-537]

COMPLAINT received and sworn to in the Cambridge Division of the District Court Department on May 20, 2009.

The case was heard by *James H. Wexler*, J., and a proceeding to review sentence was had before him.

*Malcolm L. Burdine* for the defendant.

*Stephen C. Hoctor*, Assistant District Attorney, for the Commonwealth.

KATZMANN, J. A complaint issued in the Cambridge Division of the District Court Department, charging the defendant with aggravated assault and battery by means of a dangerous weapon, in violation of G. L. c. 265, § 15A(*c*) (count 1); shoplifting merchandise, in violation of G. L. c. 266, § 30A (count 2); assault and battery of a pregnant person, in violation of G. L. c. 265 § 13A(*b*) (count 3); and assault and battery, in violation of G. L.

c. 265, § 13A (count 4). After a jury-waived trial, a District Court judge found the defendant guilty of assault and battery by means of a dangerous weapon (as a lesser included offense of aggravated assault and battery by means of a dangerous weapon) and of assault and battery. The defendant now appeals, contending that his convictions were duplicative and that the judge erred in revising and revoking his sentence. We affirm.

1. *Background.* Under the familiar standard, *Commonwealth v. Latimore*, 378 Mass. 671, 676-677 (1979), the judge could have found the following. On March 29, 2009, Tiffany Pimentel was working as a loss prevention officer at Shaw's Supermarket in the Porter Square area of Cambridge. While watching the surveillance system, she noticed the defendant placing various food items into a bag. The defendant then left the store. Pimentel left her office and followed him a short distance on foot. She was approximately one-half car length behind him. The defendant then turned around and lunged at her. Pimentel screamed that she was pregnant and assumed a defensive position as the defendant was punching her high in her body and stomach. When Pimentel crouched down, the defendant, who was wearing running shoes, kicked her in the legs five to seven times.

2. *Discussion.* a. *Duplicative charges.* The defendant argues, for the first time on appeal, that his conviction of assault and battery is duplicative of his conviction of assault and battery by means of a dangerous weapon because the former is a lesser included offense of the latter. "Where the defendant neither raised the issue of duplicative convictions before the trial court, nor filed a motion to revise or revoke the sentence under Mass. R.Crim.P. 29(a), 378 Mass. 899 (1979), we review his claim only to determine if a substantial risk of a miscarriage occurred." *Commonwealth v. Vick*, 454 Mass. 418, 430 n.13 (2009). "Assault and battery is a lesser included offense of assault and battery by means of a dangerous weapon." *Commonwealth v. Connolly*, 49 Mass. App. Ct. 424, 426 (2000). See G. L. c. 265, §§ 13A, 15A(*c*). Convictions of greater and lesser included offenses are allowed where they "rest on separate and distinct acts." *Commonwealth v. King*, 445 Mass. 217, 225 (2005), cert. denied, 546 U.S. 1216 (2006). "Whether a defendant's actions constitute separate and distinct acts or must be considered a

single crime is a question of fact for the [fact finder] to resolve." *Commonwealth* v. *Vick*, 454 Mass. at 435 n.16. When making this determination the fact finder must decide whether the acts are so closely related in fact as to constitute in substance but a single crime. *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 662-663 (1979). As this was a bench trial, we presume that the judge instructed himself correctly on the law. *Commonwealth* v. *Ortiz*, 431 Mass. 134, 141 (2000). See *Commonwealth* v. *Kerns*, 449 Mass. 641, 650 n.13 (2007).

Here, the judge could have found that two separate acts occurred. The first, assault and battery, occurred when the defendant began punching Pimentel. The second act, assault and battery by means of a dangerous weapon, occurred when the defendant began to kick Pimentel with his shoe. This view is further supported by Pimentel's testimony. She testified that when the defendant first attacked her, "he was attempting to hit [her] up high and in [her] body, [her] stomach, and [she] was just blocking everything." As she crouched to avoid the attack, the second phase began when the defendant started punching and kicking her numerous times in the legs. Different phases of a single attack can be distinguished as separate and distinct. See *Commonwealth* v. *Connolly*, 49 Mass. App. Ct. at 425 (assault and battery charge could have been a wholly separate act, and thus not a lesser included offense of assault and battery with a dangerous weapon, since the defendant first hit the victim with his fists, and only after the victim fell to the ground did he kick the victim with his sneaker). Thus, there were two separate acts upon which the judge could reasonably base the two convictions. See *Commonwealth* v. *Lord*, 55 Mass. App. Ct. 265, 272 (2002). The defendant's convictions were not duplicative.

b. *Sentencing.* On October 6, 2009, at the end of a one-day bench trial, the District Court judge sentenced the defendant on his convictions of assault and battery by means of a dangerous weapon and assault and battery. On the first, the defendant was sentenced to two years in the house of correction, with one year to serve and the balance suspended for four years. On the second, the judge imposed a concurrent sentence of two years in the house of correction, with one year to serve and the balance

suspended for four years. The sentences were to start from and after an eighteen-month sentence that the defendant was currently serving.

At some point later in the afternoon after the sentence had been imposed, and the parties had left the courtroom, the probation department informed the judge that the defendant refused to sign the conditions of probation form and that the defendant was not happy with judge's sentence. The judge held a hearing ten days later, on October 16, 2009. The defendant's counsel explained that he was surprised by the development, that he had spoken with the defendant earlier that day and on the previous day, and that the defendant stated "fairly adamantly and repeatedly that his issue was the length of probation." Counsel explained that "I mention as a practical matter there might be [probation] violations already afoot . . . . We went over it a few times so he understood probation and what a suspended sentence was, and I think he did understand and he made it clear that he wanted me to make it clear to the Court that he objected to probation." At the hearing, the judge explained to the defendant the following:

> "When I sentence, what I try to do is take into fact a large number of conditions, who you are, the victim, your past history, what I can do to assist you. . . . I often impose sentences which have probation afterwards and the reason I do it and the Commonwealth differs as they do in this case and Probation frequently does because they say . . . he is not a good candidate for probation. The philosophical problem I have about that approach, which I've expressed, is what happens when you get out of jail. You come out onto the street and you've been in prison. . . . You've gotten yourself into a lot of trouble again and again and again and I'm not going to change my sentence. . . . [I]f I were going to change my sentence, I would make it a lot longer. . . . I could send you to jail for five years; two-and-a-half years now and then two-and-a-half years on and after. The only reason I would do that would be just to give up on you. I'm not going to do that. . . . I expect you sign the conditions of probation and if you don't I'll be able to impose another sentence because you'll be in violation of my conditions of proba-

tion . . . . I hope you'll consider what I've said with your counsel, reflect on it. And, probation, if he refuses to sign, then what I will do is I will vacate my sentence and impose a very different sentence . . . because then you're saying give up on me and I'll do that. But I'll tell you what I'll be doing is I'm going to make your jail sentence longer. It's not going to be two-and-a half years. I don't want to do that but that's something I could do, so I'm going to go off the bench."

After the judge had declared a recess so that the defendant could think about his decision and consult with his attorney, counsel informed the judge that the defendant still refused to sign the conditions of probation form despite his advice that the defendant sign it and his explanation of the consequences if the defendant refused to do so. The judge then announced that he was vacating his original sentence sua sponte and that he would impose a new sentence. The judge sentenced the defendant to two and one-half years of incarceration for count 1 and eighteen months of incarceration for count 4, to be served from and after count 1. These sentences were no longer to run from and after the sentence the defendant was already serving but, rather, would run concurrently.

The defendant contends that the judge's revocation of the original sentence and imposition of a lengthier sentence was impermissible. "A judge has considerable latitude within the framework of the applicable statute to determine the appropriate individualized sentence. . . . That sentence should reflect the judge's careful assessment of several goals: punishment, deterrence, protection of the public, and rehabilitation." *Commonwealth* v. *Goodwin*, 414 Mass. 88, 92 (1993). "[T]he judge ha[s] the right to be concerned about the defendant's character and his amenability to rehabilitation." *Id.* at 93. Under Mass. R.Crim.P. 29(a), a judge is permitted, on his or her own motion, to revise or revoke a sentence within sixty days after the imposition of the sentence. *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 269, cert. denied, 459 U.S. 864 (1982). See *Commonwealth* v. *Derry*, 26 Mass. App. Ct. 10, 12 (1988). On the one hand, the rule governs reductions of sentences motivated by demands of fairness "where a conscientious judge, after reflection or upon

receipt of new probation reports or other information, will feel that he has been too harsh or has failed to give due weight to mitigating factors which properly he should have taken into account." *Commonwealth* v. *McCulloch*, 450 Mass. 483, 487 (2008). On the other hand, of relevance here, "[i]t is well settled that a sentencing judge has the authority under rule 29(a) to increase a sentence previously imposed." *Commonwealth* v. *Derry*, 26 Mass. App. Ct. at 11.

Under rule 29(a), "the power of a trial judge to revise or revoke a criminal disposition is severely limited." *Commonwealth* v. *Goodwin*, 458 Mass. 11, 16 (2010). See generally Smith, Criminal Practice and Procedure §§ 40.4-40.6, 40.14 (3d ed. 2007 & Supp. 2011). "The purpose of a rule 29 motion is 'to permit a judge to reconsider the sentence he has imposed and determine, in light of the facts as they existed *at the time of sentencing*, whether the sentence was just' (emphasis in original)." *Commonwealth* v. *McCulloch*, *supra*, quoting from *Commonwealth* v. *DeJesus*, 440 Mass. 147, 152 (2003). "In considering whether to allow a motion to revise or revoke, 'we have repeatedly and unequivocally held that a judge may not take into account conduct of the defendant that occurs subsequent to the original sentencing.' " *Commonwealth* v. *DeJesus*, *supra*, quoting from *Commonwealth* v. *Barclay*, 424 Mass. 377, 380 (1997). See *Commonwealth* v. *Sitko*, 372 Mass. 305, 312-314 (1977); *Commonwealth* v. *White*, 436 Mass. 340, 344 n.3 (2002). See generally *Commonwealth* v. *Steele*, 42 Mass. App. Ct. 319, 320-321 (1997). The strict requirement that a revision or revocation by a judge of a sentence on his own motion take place within sixty days of the imposition of sentence reflects the concern that "a lengthy delay between sentencing and reconsideration impedes the judge's ability to 'make the determination called for by the rule without improperly considering postsentencing events.' " *Commonwealth* v. *Barclay*, 424 Mass. at 380, quoting from *Commonwealth* v. *Layne*, 386 Mass. 291, 295-296 (1982). The question before us is whether the judge's decision to revise and revoke a sentence was based on consideration of postsentencing conduct (which is not permissible) or on information that existed at the time of the original sentencing but was not known to the judge (a permissible ground). *Commonwealth* v. *Sitko*, *supra*.

Our review of the record and the sequence of events persuades us that the latter pertains.

The record reflects that immediately following his consideration of the evidence and the pronouncement of the findings of guilty, the judge announced the sentence. As he would explain at the hearing held ten days later, in sentencing the defendant to a split term, the judge was of the view that although the defendant had a prior record, the judge believed that the defendant was receptive to turning his life around; hence, rather than sentence the defendant to a longer term of incarceration, the judge determined that he would sentence the defendant to a shorter term, but with a probationary component such that he would be subject to reporting to authorities and to the constraints of the judicial system. At the time of the original sentencing, the defendant had determined that he would not sign the conditions of probation, but that belief had not been communicated to the judge. Such information, at the time of the original sentencing, would have had direct bearing on the judge's sentencing calculus and evaluation of such factors as the defendant's susceptibility to rehabilitation and the protection of the public from future wrongdoing. In other words, because the defendant's refusal to sign the conditions of probation was simply a manifestation of his attitude at the time of the original sentencing (either not communicated to the judge or not known because the defendant had not been told that he would be required to sign the conditions), then the consideration of such conduct is properly viewed not as postsentencing conduct but as a manifestation of an attitude present at the time of the original sentencing that might be considered by the judge.

"Probation after conviction is not an entitlement, but the result of a discretionary act of the sentencing judge. . . ." *Commonwealth* v. *Christian*, 46 Mass. App. Ct. 477, 481, *S.C.*, 429 Mass. 1022 (1999). "The primary goals of a probationary sentence are rehabilitation of the probationer and protection of the public. . . . Other recognized goals of probation include punishment, deterrence, and retribution." *Commonwealth* v. *Power*, 420 Mass. 410, 414-415 (1995), cert denied, 516 U.S. 1042 (1996). See *Commonwealth* v. *Pike*, 428 Mass. 393, 403 (1998); *Commonwealth* v. *Lapointe*, 435 Mass. 455, 459 (2001).

See also *Commonwealth* v. *Goodwin*, 458 Mass. 11, 15 (2010), quoting from *Mariano* v. *Judge of Dist. Ct. of Cent. Berkshire*, 243 Mass. 90, 93 (1922) ("purpose [of probation] . . . is to enable the person to get on his feet, to become law abiding and to lead a useful and upright life under the fostering influence of the probation officer"). Here, the sentencing structure originally announced by the judge, incorporating a shorter period of incarceration coupled with a probationary component, was premised on the judge's understanding that the defendant would accept this structure. Once the defendant, essentially contemporaneously with the judge's announcement of sentence, upended that assumption of amenability to rehabilitation by rejecting a probationary term, the sentence was subject to the revise and revoke provision of rule 29(a). See *Commonwealth* v. *Bruzzese*, 437 Mass. 606, 614 (2002). Since the sixty-day period had not expired, the sentence could be revised. *Ibid.* The sentence ultimately imposed by the judge was within the limits of the statutes under which the defendant was convicted. See *Commonwealth* v. *Power*, 420 Mass. at 413.[1]

We are unpersuaded by the defendant's argument that, properly viewed, the judge had determined that the defendant, by refusing to sign the special conditions of probation, had violated the conditions of his probation and thus the appropriate mechanism necessarily was the revocation of probation. The defendant notes that "[p]ursuant to G. L. c. 279, § 3, . . . if the suspension of a sentence is revoked, 'the sentence shall be in full force and effect.' The judge ha[s] no choice, once he decide[s] that the

---

[1] We are unpersuaded by the defendant's contention that the sentencing proceeding violated principles of due process. As noted, the defendant's attorney was present at the hearing; the attorney warned the defendant of a possible longer sentence if he refused to sign the conditions of probation; the judge explained to the defendant that he was not going to "give up" on him, and explained the consequences of not signing the conditions; and the judge gave the defendant time to reconsider his decision and to discuss the sentences with his attorney.

We also discern no merit in the defendant's contention that the judge's revision of the sentences, resulting in a lengthier term of incarceration, violated principles of double jeopardy. Here, the sentences were not greater than what the Legislature had prescribed, the defendant was ordered to serve one sentence for each conviction, and he was not punished twice for the same offense. The double jeopardy claim thus fails. See *Aldoupolis* v. *Commonwealth*, 386 Mass. at 272-274.

suspension of sentence should be revoked." *Commonwealth* v. *Holmgren*, 421 Mass. 224, 228 (1995). See *Commonwealth* v. *Goodwin*, 458 Mass. at 15 n.5 ("Where probation is coupled with a sentence of imprisonment, with execution suspended for the period of probation, a judge finding a violation of a condition of probation, if she orders any period of imprisonment, must impose the suspended sentence"). As such, the defendant contends it was impermissible for the judge to impose a lengthier sentence than initially imposed.

We agree, as the defendant acknowledges, that "a refusal of a defendant to acknowledge probation conditions constitute[s] a violation of them and grounds for revocation." *Commonwealth* v. *Christian*, 46 Mass. App. Ct. at 482. See *Rubera* v. *Commonwealth*, 371 Mass. 177, 180-181 (1976). In *Christian*, the defendant was serving a sentence of one year of probation (with no incarceration component) when he refused to sign the specific conditions of probation. The defendant here, by contrast, as has been noted, had rejected probation following incarceration as a component of his sentence, such that the sentencing scheme as originally contemplated by the judge was not effectuated. In any event, in *Christian* — which was analyzed as a probation revocation proceeding — the judge did not have occasion to address whether a revision and revocation of the sentence might have been an alternative mechanism; the one-year sentence in the house of correction that the judge ordered upon revocation of probation did not exceed the original sentence.[2] *Com-*

---

[2] Our conclusion that this was not a revocation proceeding is further buttressed by the fact that the defendant had not begun to serve his probationary term. We note that when "a defendant is sentenced to both incarceration and probation, probation typically begins on the defendant's release from incarceration." *Commonwealth* v. *Ruiz*, 453 Mass. 474, 480 (2009). "While a judge 'is not barred from placing a defendant on probation during the period of his incarceration,' there must be evidence that the judge in fact did so." *Ibid.*, quoting from *Commonwealth* v. *Juzba*, 44 Mass. App. Ct. 457, 459 (1998). In order to satisfy this rule, the terms of probation must state explicitly that probation is to commence during the period of incarceration. *Commonwealth* v. *Ruiz*, *supra*. There was no evidence here that the judge placed the defendant on probation during the period of his incarceration, nor did the terms of probation state explicitly that probation and some or all of its attendant conditions were to commence during the period of incarceration. Indeed, quite to the contrary, in explaining his rationale for a split sentence, the judge made clear that it was his intention that the probation term follow incarceration.

*monwealth* v. *Christian,* 46 Mass. App. Ct. at 479. The revision and revocation of the sentence here was not in error.[3]

*Judgment affirmed.*

---

[3]Although the judge referred to a failure to sign conditions as a basis for a revocation of probation, his action amounted to a revision of the defendant's sentences pursuant to rule 29(a). We look to the whole context of the judge's actions and characterize them accordingly. See generally *Commonwealth* v. *Cornish,* 28 Mass. App. Ct. 173, 178-179 (1989).

The defendant cites *Commonwealth* v. *Gebo,* 75 Mass. App. Ct. 1108 (2009), an unpublished memorandum and order issued pursuant to Appeals Court rule 1:28, and thus having persuasive, but not precedential, authority. *Chace* v. *Curran,* 71 Mass. App. Ct. 258, 260 n.4 (2008). In *Gebo,* "[t]he Commonwealth concede[d] that the sentencing judge could not revise the defendant's sentence under rule 29 on the basis of his postsentencing refusal to sign the conditions of probation form." As the Commonwealth states correctly in this appeal, the concession in *Gebo* was erroneous. In any event, we note that in *Gebo,* unlike here, the judge imposed the defendant's previously suspended sentence, and thus the question presented in the instant appeal was not addressed.