Cordy, J.
This case is before us following the denial by a Superior Court judge of Kenneth Dykens’s motion to vacate several convictions resulting from his guilty pleas in connection with a February, 2005, arrest for attempted burglary and other offenses. See Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001). Specifically, he seeks to vacate two of his three convictions of attempted unarmed burglary in violation of G. L. *636 c. 274, § 6, contending that they are duplicative of his conviction on the third, and thus barred under principles of double jeopardy. He also seeks to vacate his conviction of possession of a bur-glarious tool or implement (a rock) in violation of G. L. c. 266, § 49, on the ground that the indictment failed to state a crime, and the Superior Court therefore lacked jurisdiction to accept a guilty plea and impose a sentence on it.
We transferred Dykens’s appeal to this court on our own motion to decide whether, where a defendant has pleaded guilty to multiple counts of attempted unarmed burglary, he may subsequently challenge his guilty pleas pursuant to Mass. R. Crim. R 30 (a) on double jeopardy grounds or whether he has waived any such claim by pleading guilty; and whether, where a defendant over the course of a single late evening and early morning unsuccessfully tried to break into a home through three different access points, he may be charged with multiple counts of attempted unarmed burglary pursuant to G. L. c. 274, § 6, or whether those acts constitute a single continuous course of conduct rendering conviction on multiple counts duplicative.
We conclude that although Dykens may bring his claim under rule 30 (a), the attempt statute, G. L. c. 274, § 6, permits multiple convictions for discrete, completed attempts of unarmed burglary; that whether separate indictments or complaints adequately charge separate attempts must be determined on the particulars of each case; and in the present case, that Dykens’s multiple convictions and punishments were for separate attempts, and therefore his multiple convictions and punishments do not violate double jeopardy. We further conclude that the court lacked jurisdiction to accept Dykens’s guilty plea as to the indictment charging possession of a burglarious tool or implement because the indictment failed to allege a crime. Accordingly, we affirm in part and reverse in part the denial of Dykens’s motion for postcon-viction relief.
1. Background. In the early morning hours of February 10, 2005, John and Jacqui Cram of Malden telephoned 911 after they heard the sounds of breaking glass and saw a figure moving around on their property. Malden police Officers Robert South-bridge and Brian Killion responded to the call and observed the following on their arrival: (1) a ladder that the Crams had last seen lying on the ground had been placed against the house to provide access to a second-story window; (2) a screen had been tom off a first-floor window; and (3) a sliding glass door at the *637 rear of the house had been smashed. A large rock which had not previously been on the deck lay nearby and apparently had been used to break the glass.
The officers observed fresh footprints in the snow, which Self-ridge followed through neighboring streets and yards and over a chain link fence; he discovered Dykens hiding among some rocks. The officer ordered Dykens not to move, but Dykens attempted to escape. The two men scuffled, and Killion eventually arrived to assist. After a struggle, the officers were able to subdue Dykens and handcuff him. As they stood him up to transport him to the police station, Dykens kicked Killion in the face with a shod foot.
In March, 2005, a grand jury indicted Dykens on seventeen counts stemming from his arrest, including three counts of attempted unarmed burglary[1] and one count of possession of a burglarious instrument (a heavy rock), which are at issue in this appeal.[2] Dykens pleaded not guilty to all charges at his arraignment, and subsequently filed a motion to dismiss eight of the seventeen indictments. As to two counts of attempted unarmed burglary, Dykens argued that they were duplicative of a third count. A judge denied the motion as to the multiple indictments for attempted unarmed burglary.
On October 17,2005, Dykens pleaded guilty to the three counts *638 of attempted unarmed burglary, being a habitual offender, assault with intent to maim, assault and battery by means of a dangerous weapon, possession of a burglarious instrument, assault and battery on a public employee, and resisting arrest. Dykens was sentenced to from seven years to seven years and one day in State prison on the indictment charging him with assault with intent to maim, five years in State prison concurrent with that sentence on the indictment charging him with attempted unarmed burglary as a habitual offender, and five years’ probation from and after his completed sentences on the other counts.
After Dykens was released from prison, a probation violation warrant issued. On March 22, 2013, a Superior Court judge held a final probation surrender hearing. He found Dykens in violation of the term of his probation and sentenced him to two years in a house of correction on the charge of assault and battery by means of a dangerous weapon, and an additional two years on the charge of possessing a burglarious implement, to be served from and after that. The judge also terminated Dykens’s probation on the remaining convictions.
On October 11, 2013, Dykens moved to vacate two of his convictions of attempted armed burglary and his conviction of possessing a burglarious tool or implement pursuant to rule 30 (a). In his motion, Dykens asserted that the convictions of attempted burglary were duplicative and should therefore be vacated and dismissed. He also argued that the rock he used to break the sliding door was not a burglarious instrument within the meaning of G. L. c. 266, § 49, and that his conviction under the statute should be vacated because the indictment was defective for failing to state a crime. On September 2, 2014, the judge denied the motion. Dykens timely appealed.
2. Discussion, a. Collateral attack on guilty plea. Both the double jeopardy clause of the Fifth Amendment to the United States Constitution and Massachusetts common law prohibit the imposition of multiple punishments for the same offense. Commonwealth v. Rollins, 470 Mass. 66, 70 (2014), citing Marshall v. Commonwealth, 463 Mass. 529, 534 (2012). It is well settled in our jurisprudence that a “guilty plea will not preclude a court from hearing a constitutional claim that the State should not have tried the defendant at all.” Commonwealth v. Negron, 462 Mass. 102, 104 (2012), quoting Commonwealth v. Clark, 379 Mass. 623, 626 (1980).
A guilty plea is “an admission of the facts charged and is itself a conviction” (quotation and citation omitted), Negron, 462 Mass. *639 at 105, and is properly challenged under rule 30 (a), which provides:
“Any person who is imprisoned or whose liberty is restrained pursuant to a criminal conviction may at any time, as of right, file a written motion requesting the trial judge to release him or her or to correct the sentence then being served upon the ground that the confinement or restraint was imposed in violation of the Constitution or laws of the United States or of the Commonwealth of Massachusetts.”
Mass. R. Crim. R 30 (a).
In Negron, 462 Mass. at 106-107, we held that a defendant is not precluded from challenging his convictions (based on guilty pleas) on double jeopardy grounds where the defendant claims that the charges pleaded to are duplicative on their face and further expansion of the record or evidentiary findings are not required. Having concluded that the defendant could challenge the convictions as duplicative, the court went on to analyze whether they were in fact duplicative.[3] Id. at 108-111.
The relevant convictions in Negron were for different crimes, armed assault in a dwelling and aggravated burglary, under different statutes, but arising out of the same criminal conduct. Id. at 103. The court analyzed the elements of the crimes and concluded that the former was not a lesser included offense of the latter. Id. at 109-111. Consequently, they were not duplicative and convictions of both did not violate double jeopardy. Id. at 109.
Dykens’s double jeopardy challenge to his multiple convictions of attempted unarmed burglary does not involve a claim that some of the charges are lesser included offenses of the others (and thus duplicative) but, rather, that the underlying conduct on which they are based constitutes but a single continuing offense, and thus multiple convictions and punishments for that offense are dupli-cative and violative of his right to be free from double jeopardy.
The record in this case includes the three indictments, each alleging a different act in furtherance of each attempt, and the transcript of the hearing at which Dykens pleaded guilty to all *640 three. During the plea hearing, the prosecutor briefly described the evidence that would have been presented as to each of the three indictments, including Dykens’s failed efforts to gain entry by different means through three separate points of access: a window on the second floor (toward which he placed a ladder against the house); a window on the first floor (from which he removed a screen); and a sliding glass door on the first floor in the rear of the home (which he shattered with a rock). Dykens admitted that he had done each of the things alleged by the prosecutor with the intent to enter the home through the three different access points and, thus, that he was guilty of three different attempts to burglarize the same home.
Where the indictments on their face charge three attempts to burglarize the same residence on or about the same date, and the record includes at least a minimal description of the key evidence establishing each of those attempts, we can decide whether the indictments are duplicative without going beyond the record, and therefore, Dykens may bring a double jeopardy challenge.
b. Duplicative convictions. Where a single statute is involved, we must decide “whether two [or more] discrete offenses were proved under that statute rather than a single continuing offense” (citations omitted). Commonwealth v. Traylor, 472 Mass. 260, 268 (2015).
Our inquiry starts with what “unit of prosecution” the Legislature intended as the punishable act for violations of the attempt statute, G. L. c. 274, § 6. See Rollins, 470 Mass. at 70; Commonwealth v. Rabb, 431 Mass. 123, 128 (2000).[4] We begin with the language and purpose of the statute to determine whether it explicitly addresses the appropriate unit of prosecution and, if it does not, “to ascertain that unit, keeping in mind that any ambiguity that arises in the process must be resolved, under the rule of lenity, in the defendant’s favor.” Rollins, supra, quoting Rabb, supra. Also “[Relevant to discerning a criminal statute’s unit of prosecution is the continuous offense doctrine, which recognizes that certain criminal statutes are intended to punish just once for a continuing course of conduct, rather than for each and every discrete act comprising that course of conduct.” Commonwealth v. Horne, 466 Mass. 440, 450 (2013).
*641 The Massachusetts attempt statute, G. L. c. 274, § 6, punishes “[w]hoever attempts to commit a crime by doing any act toward its commission, but fails in its perpetration, or is intercepted or prevented in its perpetration.” Here, we construe the attempt statute in conjunction with the underlying substantive offense of unarmed burglary.[5]
The language of the attempt statute is not explicit as to the permissible unit of prosecution. Dykens asks us to interpret the language in § 6 according to the rules for construction of statutes set out in G. L. c. 4, § 6, Fourth, which provides in relevant part that “[w]ords importing the singular number may extend and be applied to several persons or things, words importing the plural number may include the singular” (emphasis added). When applied to the language of the attempt statute, in Dykens’s view, “any act” becomes “any act or acts.” Accordingly, Dykens believes, we can infer legislative intent that all overt acts directed toward the commission of a crime be punished by a single attempt charge.
We are not persuaded by Dykens’s reasoning. By its plain language, the purpose of the attempt statute is to penalize those individuals who would have achieved their criminal objective but for factual circumstances that result in failure, interception, or prevention of the crime. See Commonwealth v. Kennedy, 170 Mass. 18, 20 (1897) (“aim of the [attempt statute] is not to punish sins, but is to prevent certain external results”). Therefore, we conclude that the Legislature did not intend to reward a defendant who, on failing to accomplish his criminal endeavor in one manner, undertakes to achieve the substantive crime anew in another.
Nor do we conclude that the continuing offense doctrine advances Dykens’s reading of the statute to impose a single punishment for distinct attempts. Dykens relies on a decision from the Appeals Court for the proposition that charged offenses are duplicative where the acts underlying the offense are part of a “continuous stream of conduct occurring within a short time frame and governed by a single criminal design,” and thus united in “time, place, and intent.” Commonwealth v. Howze, 58 Mass. *642 App. Ct. 147, 153 (2003), overruled on other grounds by Commonwealth v. Kelly, 470 Mass. 682, 700-701 (2015). In Howze, supra at 147, 153, the Appeals Court held that, where the defendant was convicted of indecent assault and battery on a child and of rape of a child, “the act of removing the victim’s clothing was sufficiently bound up with and necessary to the act of penetration that due process [forbade] separating the conduct into discrete units for prosecution.” See Commonwealth v. Suero, 465 Mass. 215, 220-221 (2013) (conviction of indecent assault and battery vacated as duplicative of rape convictions where former rested on removal of rape victim’s underwear that was “incidental and necessary to the rape”).
Howze and Suero are inapposite. Although Dykens’s acts occurred close together in time and at the same home, his acts were not “bound up with and necessary to” one another as the defendant’s actions were in those cases. Howze, 58 Mass. App. Ct. at 153. Rather, his attempts to gain access via different entry points of the dwelling each could have resulted in a successful break of the dwelling. A different conclusion could be drawn if the defendant was charged with three separate attempts based on the acts of (1) the placement of a ladder to reach a window, (2) the removal of the screen from that same window, and (3) the use of a rock to then break the glass on that window in an effort to gain access. In such circumstances, the three acts would in fact be “bound up with and necessary to” the completion of a single crime, much as the removal of underwear in the perpetration of a rape.
Dykens also points to our decision in Commonwealth v. Bolden, 470 Mass. 274, 274-275 (2014), in which we held that a defendant could not be twice convicted of aggravated burglary under G. L. c. 266, § 14, for breaking and entering a single dwelling. In that case, the defendant broke into a dwelling where a husband and wife resided and assaulted the husband in the basement. Id. at 275-276. He then broke through an interior door leading to the first floor and assaulted the wife. Id. at 276. He was subsequently charged with two counts of aggravated burglary, one premised on the break into the house and the assault of the husband, and the other on the break of the interior door and assault of the wife. Id. We vacated the conviction on the second indictment, concluding that “once a dwelling is ‘broken,’ any subsequent breaks occurring therein — reasonably close in time and purpose — are but a continuation of the offense and thus *643 insufficient to support separate convictions under § 14.” Id. at 279. We stated:
“Once a person has broken and entered any part of the dwelling, at night,... with intent to commit a felony therein, the predicate offense of burglary as to that dwelling is complete. Because arming oneself with a dangerous weapon and assaulting the inhabitants of that dwelling merely aggravate that singular predicate offense, the Commonwealth may not aggregate such actions into multiple units of prosecution under § 14” (footnote omitted).
Id. at 280. Dykens argues that if multiple breaks of a single dwelling do not create distinct, punishable offenses, then multiple attempted breaks into a single dwelling must also constitute a continuous offense.
Dykens’s reliance on Bolden is misplaced. The unit of prosecution for aggravated burglary is different from the unit of prosecution for attempted burglary. For the latter the proper unit of prosecution is the act necessary to prove the inchoate offense of attempt, and not the substantive crime of burglary. Thus, although in Bolden the unit of prosecution was the act of breaking and entering a singular dwelling, the unit of prosecution for attempted burglary is “any act toward [the substantive crime’s] commission.” G. L. c. 274, § 6.
We have consistently interpreted the attempt statute to require “a showing that the defendant, after preparing to commit the crime, has taken such overt acts toward fulfilling the crime that ‘come near enough to the accomplishment of the substantive offence to be punishable.’ ” Commonwealth v. Bell, 455 Mass. 408, 412 (2009), quoting Commonwealth v. Peaslee, 177 Mass. 267, 271 (1901). Moreover, where distinct acts form the basis of separate indictments, the Commonwealth must still prove all elements required by the attempt statute for each charge.[6]
Here, each of Dykens’s acts, as alleged in the indictments, fit squarely within the definition of an overt act. See Commonwealth v. Foley, 24 Mass. App. Ct. 114, 115 (1987) (complaint or indictment charging attempt must specify overt act). Positioning a *644 ladder to facilitate entry into the dwelling, removing an outer screen to facilitate entry into the dwelling, and smashing a glass sliding door to facilitate entry each constitutes an independent act sufficient to warrant a charge of attempt. In each instance, Dykens, after having entered upon the Crams’ property with the intent to break into their home, was in a position to accomplish the substantive offense absent his apparent inability to gain entry at the different access points. In other words, with each failure to break into the dwelling, the crime of attempt was complete.
Although the proximity in time, manner, and place of Dykens’s conduct is relevant to distinguishing discrete acts from a continuous act, such factors are not in and of themselves dispositive. Rather, Dykens’s attempts to gain entry at different access points of the dwelling weigh heavily against a determination that there was a “continuous stream of conduct.” Howze, 58 Mass. App. Ct. at 153. With each failure to gain entry, Dykens had the opportunity to abandon his endeavors. Instead, he moved on to another potential point of access to the home and committed further unrelated acts in an effort to break in, finally fleeing when he awakened the residents inside. The Legislature surely did not intend to reward such persistence by encompassing multiple, discrete attempts within a single unit of prosecution.
Of course, our analysis is not so granular as to say that picking up a ladder is not part of the same course of conduct where the defendant then proceeds to place the ladder against a house. Similarly, a defendant who repeatedly batters a single door with the purpose of gaining entry has likely committed only one attempt at breaking and entering. Dykens’s case highlights a longstanding comprehension in our jurisprudence of the distinction between constituent acts that, taken together, may amount to an attempt and discrete acts that, in and of themselves, establish the elements required to prove the inchoate offense. See Peaslee, 177 Mass. at 271 (distinguishing between act sufficient to establish attempt and those preparatory actions that, taken together, may amount to attempt).[7] See also Commonwealth v. Burns, 8 Mass. App. Ct. 194, 196 (1979), citing Peaslee, supra at 271-274 (“The *645 essence of the crime of attempt is that the defendant has taken a step towards a criminal offense with specific intent to commit that particular crime.... It is not enough to allege that a defendant has formed the intent to commit a crime or that he has merely made preparations for the commission of a crime” [quotation and citation omitted]).
Thus, we conclude that multiple attempted breaks of a single dwelling furthered by separate acts, each coming near to the accomplishment of the crime of burglary, and not bound up with and necessary to each other, may be charged as separate offenses. The question whether factual allegations within multiple indictments adequately charge separate attempts so as to permit their prosecution is one of fact and law and dependent on the particulars in each case. The question is one that, in the first instance, may be for the motion or trial judge in the context of a motion to dismiss and, should the case proceed to trial, is a factual question that a properly instructed jury must decide. In any event, after a jury verdict of guilty on multiple convictions, and on the request of defense counsel for a judgment notwithstanding the verdict, “a judge also must determine whether the convictions violate the defendant’s rights” under the principles of double jeopardy. Suero, 465 Mass. at 222.[8]
c. Jurisdictional defect. Dykens also asserts that his conviction under G. L. c. 266, § 49, of possession of a burglarious tool or implement must be vacated because a rock is not a tool or an *646 implement within the meaning of the statute.[9] He seeks review on the ground that the indictment was defective in failing to allege a crime, and the court lacked jurisdiction to accept his plea and impose a sentence for such conduct. “No court has jurisdiction to sentence a defendant for that which is not a crime.” Commonwealth v. Wilson, 72 Mass. App. Ct. 416, 418, quoting Commonwealth v. Andler, 247 Mass. 580, 582 (1924). We agree.
“We interpret statutory language to give effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an absurd or illogical result” (quotations omitted). Commonwealth v. Scott, 464 Mass. 355, 358 (2013). In 1853, the Legislature enacted the predecessor of G. L. c. 266, § 49, entitled “An Act concerning implements of burglary.” See St. 1853, c. 194. The statute came after the Committee on the Judiciary was tasked with “consider[ing] the [expediency of providing for the punishment of persons making [b]urglar tools, or having such in their possession, with intent that they shall be used.” 1853 House J. at 629. The bill containing the apparent final version of the statute was reported from the Committee on the Judiciary and passed by both the House of Representatives and the Senate; there is no mention of any amendments to the bill. See 1853 House J. at 680, 762; 1853 Senate J. at 529, 538, 551.
From this history we can infer that the statute was enacted with the purpose of punishing individuals making or possessing burglar’s tools. A question remains, however, as to what constitutes a “tool” or “implement” under § 49, as the statute does not define these terms. We therefore look to the ordinary meaning of the word as of 1853, the year the statute was enacted. See Kerins v. Lima, 425 Mass. 108, 111 n.5 (1997) (where term in statute is undefined, we may conclude that Legislature intended definition that would have been available at time original statute enacted). The 1845 edition of Webster’s dictionary defined “tool” as “[a]n instrument of manual operation, particularly such as are used by *647 farmers and mechanics; as, the tools of a joiner, cabinet-maker, smith or shoemaker.” 2 N. Webster, An American Dictionary of the English Language 798 (1845). “Implement” was defined as “[w]hatever may supply wants: particularly, as now used, tools, utensils, vessels, instruments; the tools or instruments of labor.” 1 N. Webster, An American Dictionary of the English Language 870 (1845).
From these definitions, we can conclude that the words “tool” and “implement” refer to man-made, rather than naturally occurring, items. This conclusion is supported by other language in the statute, which further describes tools and implements as those “adapted and designed for cutting through, forcing or breaking open.” G. L. c. 266, § 49.
Our reading of § 49 to exclude naturally occurring objects is also consistent with this court’s prior interpretations of the statute. We have long recognized that the statute encompasses both ordinary tools and those designed specifically for burglary. See Commonwealth v. Jones, 355 Mass. 170, 176-177 (1969) (ordinary tools may take on character of burglarious tools if they are intended to be used for burglarious purposes); Commonwealth v. Tivnon, 8 Gray 375, 381 (1857) (“A chisel or centre-bit, though a tool in common use for ordinary purposes, is quite as efficacious in the hands of a burglar to carry out his felonious intent, as a jimmy or a lock-picker, which is made for the sole purpose of being used to break and enter buildings”). See also Commonwealth v. Krasner, 358 Mass. 727, 731, S.C., 360 Mass. 848 (1971) (battering ram a burglarious implement under § 49); Commonwealth v. Faust, 81 Mass. App. Ct. 498, 500-501 (2012) (screwdrivers, knife, and flashlights are burglarious instruments under § 49); Commonwealth v. Aleo, 18 Mass. App. Ct. 916, 916-917 (1984) (screwdrivers and dent pullers are burglarious implements under § 49); Commonwealth v. Dreyer, 18 Mass. App. Ct. 562, 565 (1984) (screwdriver a burglarious implement under § 49). In no case have we found that a naturally occurring object, such as a rock, is a tool or an implement within the meaning of the statute.
Notwithstanding this fact, the Commonwealth contends that the rock used by Dykens to smash the Crams’ glass door could have been altered in some way to make it more efficacious in smashing windows. Even if this were the case, in light of the purpose and meaning of § 49, we cannot conclude that a rock is a tool or an implement designed or adapted to effect an individual’s burglarious intent. Rather we hold that the words “tool” and “implement,” as they appear in § 49, refer to man-made instruments.
*648 In one of our earliest cases addressing § 49, we held that an indictment alleging a violation of St. 1853, c. 194, is supported by proof that some of the implements described in the indictment were in the possession of the defendant, and “adapted and designed for the unlawful purpose specified.” Tivnon, 8 Gray at 380. Here, the indictment failed to identify an implement “adapted and designed” for breaking into a building, G. L. c. 266, § 49, because a rock is not a tool or implement within the meaning of § 49. Where an indictment fails to allege a fact necessary to constitute an offense, it is defective, and “no court has jurisdiction to entertain it.” Commonwealth v. Cantres, 405 Mass. 238, 239-240 (1989). Because we conclude that a rock is not a tool or implement under § 49, the indictment in Dykens’s case failed to allege a crime for which the court could accept a guilty plea, and Dykens’s conviction must be vacated.
3. Conclusion. For the reasons discussed herein, the denial of Dykens’s motion to vacate two of his convictions of attempted unarmed burglary is affirmed. The denial of his motion to vacate his conviction of possession of a burglarious tool or implement is reversed, and the matter is remanded to the Superior Court for the dismissal of that indictment.

So ordered.

Three separate indictments were returned charging Kenneth Dykens with violating G. L. c. 274, § 6, “on or about February 10.” The first indictment charged, in relevant part, that “Kenneth Dykens ... did attempt to break and enter the dwelling house of John Cram and Jacqui Cram in the nighttime with intent to commit a felony therein, and in such attempt did smash a glass sliding door in order to facilitate entry into the home ... but did fail in the perpetration of said offense, or was intercepted, or prevented in the perpetration of the said attempted offense” (emphasis added). The second indictment at issue charged, in relevant part, that “Kenneth Dykens . . . did attempt to break and enter the dwelling house of John Cram and Jacqui Cram in the nighttime with intent to commit a felony, and in such attempt did remove an outer screen in order to facilitate entry into the home . . . but did fail in the perpetration of said offense, or was intercepted, or prevented in the perpetration of the said attempted offense” (emphasis added). The third indictment at issue charged, in relevant part, that “Kenneth Dykens ... did attempt to break and enter the dwelling house of John Cram and Jacqui Cram in the nighttime with intent to commit a felony therein, and in such attempt did position a ladder in order to facilitate entry into the home . . . but did fail in the perpetration of said offense, or was intercepted, or prevented in the perpetration of the said attempted offense” (emphasis added).

Dykens also was indicted for assault with the intent to maim, assault and battery by means of a dangerous weapon (a shod foot), malicious destruction of property with a value over $250, assault and battery on a public employee (two counts), resisting arrest, and being a habitual offender.

The court in Commonwealth v. Negron, 462 Mass. 102, 108 n.6 (2012), left open the question whether the defendant, having pleaded guilty, would relinquish his entitlement to bring a double jeopardy challenge where a claim of duplicative convictions required an expansion of the record or an evidentiary hearing. We need not answer that question in this case.

Although many of our cases have defined the appropriate unit of prosecution under a particular statute, we have not defined the term itself. We decide now that a unit of prosecution is a criminal act or course of conduct punishable at law. See United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 225-226 (1952).

General Laws c. 266, § 15, punishes “[wjhoever breaks and enters a dwelling house in the night time, with the intent [to commit a felony], or, having entered with such intent, breaks such dwelling house in the night time, the offender not being armed, nor arming himself in such house, with a dangerous weapon, nor making an assault upon a person lawfully therein . . . .”

Dykens does not dispute that he possessed the requisite intent; we therefore focus on whether the facts alleged in each indictment support a finding of distinct overt acts that support independent convictions.

 A similar distinction is made in United States v. Resendiz-Ponce, 549 U.S. 102, 109 n.5 (2007), which Dykens relies on in his brief for the position that “an attempt involving multiple overt acts might conceivably qualify for several separate offenses, thus perversely enhancing, rather than avoiding, the risk of successive prosecution for the same wrong.” In Resendiz-Ponce, the defendant, a Mexican citizen, was charged with attempting to unlawfully enter the United States based on the following acts: he walked into an inspection area; presented *645 a misleading identification card; and lied to the inspector. Id. at 103, 109. The United States Supreme Court explained that “[individually and cumulatively, those acts tend to prove the charged attempt — but none was essential to the finding of guilt in this case. All three acts were rather part of a single course of conduct culminating in the charged ‘attempt.’ ” Id. at 109. Thus the charged conduct constituted a single attempt, which failed a single time. In contrast, Dykens committed acts at three separate access points.

Under the doctrine of merger, where the facts support multiple attempt charges but where the defendant ultimately succeeds in committing the substantive crime, the attempt resulting in completion of the crime would merge with the substantive offense. Any other charged attempts, however, could stand as separate convictions so long as the Commonwealth proved the requisite elements of the separately charged attempts, including the intent to commit the underlying crime, and an overt act coming near to its accomplishment. The analysis here is straightforward where Dykens admitted to having the requisite intent in connection with each attempt to break and enter the Crams’ home, as well as to having committed separate overt acts while on the victims’ property in his efforts to gain access to the home through three different points of entry.

General Laws c. 266, § 49, punishes “[w]hoever makes or mends, or begins to make or mend, or knowingly has in his possession, an engine, machine, tool or implement adapted and designed for cutting through, forcing or breaking open a building, room, vault, safe or other depository, in order to steal therefrom money or other property, or to commit any other crime, knowing the same to be adapted and designed for the purpose aforesaid, with intent to use or employ or allow the same to be used or employed for such purpose, or whoever knowingly has in his possession a master key designed to fit more than one motor vehicle, with intent to use or employ the same to steal a motor vehicle or other property therefrom.”