NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

22-P-710                                    Appeals Court

COMMONWEALTH vs. JEREMIAH WOODEN.

No. 22-P-710.

Essex.     April 6, 2023. - January 12, 2023.

Present: Blake, Grant, & Smyth, JJ.

Assault by Means of a Dangerous Weapon. Assault and Battery on Certain Public Officers and Employees. Police Officer. Firearms. Resisting Arrest. License. Constitutional Law, Right to bear arms, Double jeopardy. Practice, Criminal, Double jeopardy, Duplicative convictions.

Indictments found and returned in the Superior Court Department on May 11, 2016.

The cases were tried before Hélène Kazanjian, J.

Michael A. Waryasz for the defendant.
Kathryn L. Janssen, Assistant District Attorney, for the Commonwealth.

BLAKE, J. Following a jury trial in the Superior Court, the defendant, Jeremiah Wooden, was convicted of two counts of assault by means of a dangerous weapon, a firearm (ADW), assault and battery on a police officer, carrying a firearm without a

license as a level one armed career criminal under G. L. c. 269, § 10G (a),[1] and resisting arrest.[2]  On appeal, the defendant contends that the convictions of ADW are duplicative because the offenses occurred during one continuous and uninterrupted altercation and therefore, one of those convictions must be vacated and the case remanded for resentencing.  As we are unpersuaded by this argument, we affirm the ADW, assault and battery on a police officer, and resisting arrest verdicts.  We vacate the conviction and set aside the verdict on the charge of carrying a firearm without a license as a level one armed career criminal, pursuant to Commonwealth v. Guardado, 491 Mass. 666 (2023) (Guardado I), and Commonwealth v. Guardado, 493 Mass. 1 (2023) (Guardado II).  Accordingly, we remand for reconsideration of the resentencing scheme.

Background.  We recite the facts that the jury could have found.[3]  At approximately 6 P.M. on April 14, 2016, Salem police

---

[1] After the defendant was found guilty of carrying a firearm without a license, the defendant pleaded guilty to the level one armed career criminal enhancement.

[2] The defendant was found not guilty of armed assault with intent to murder and one count of ADW.

[3] Our review is hampered because the proceedings of the third day of trial were not recorded.  The parties filed a stipulation pursuant to Mass. R. A. P. 8, as appearing in 481 Mass. 1611 (2019), but the parties have not provided us with the trial judge's recollection of the proceedings on that date in order to reconstruct the record more fully.

officers Rafael Gonzalez and Brian St. Pierre were on patrol when Gonzalez noticed a dark-colored sport utility vehicle (SUV) being driven by the defendant. Both Gonzalez and St. Pierre were familiar with the defendant and knew that there was an outstanding warrant for his arrest. As the police cruiser passed by the SUV, Gonzalez and the defendant looked at one another. The officers activated the cruiser's blue lights, and the defendant pulled the SUV over on Fairfield Street. The officers pulled the cruiser behind the SUV, and Gonzalez saw the defendant climb from the driver's seat into the rear passenger seat. Gonzalez approached the driver's side of the SUV, while St. Pierre approached the passenger's side. As St. Pierre approached, the defendant got out of the SUV and stood on the sidewalk. St. Pierre walked toward the defendant, and the defendant began to back up. The defendant ignored St. Pierre's instructions and attempted to flee. At that point, Gonzalez came around the front of the SUV and attempted to tackle the defendant but was unsuccessful.

St. Pierre ran after the defendant. As the defendant cut across the lawn of a home at 7 Fairfield Street, he began to lose his footing. The defendant turned down the driveway and lost his footing even more, allowing St. Pierre to catch up with him. As St. Pierre tried to grab the defendant, a struggle ensued. St. Pierre told the defendant that he was under arrest,

but the defendant continued to resist. St. Pierre pushed the defendant against a pickup truck in the driveway and tried to grab the defendant by his shoulders. The defendant was able to get out of the zip-up sweatshirt that he was wearing, preventing St. Pierre from gaining control of him. St. Pierre became "[a]lmost wedged in the corner" between the truck and the garage.

As St. Pierre tried to gain control of the defendant from behind, the defendant reached into the right side of his pants and pulled something out. The defendant moved his left hand over his right hand, and St. Pierre heard the defendant "push[] the rack back on the slide of a gun." The defendant "lowered his center of gravity," at which time St. Pierre lost his grip on the defendant and "clearly [saw a black handgun] pointed at [his] left leg." St. Pierre "tried to pick up [his] left leg and almost put it behind [the defendant]" so that if the defendant was "going to shoot [St. Pierre's leg], [the defendant would] have to shoot himself." St. Pierre lost his balance as he tried to gain control of the defendant and the gun; he fell to his knees between the pickup truck and garage.

St. Pierre looked up and saw the defendant facing him from less than one foot away, pointing the gun directly at him. St. Pierre sat back and put his hands up. The defendant then "stepped back a little bit, squared himself off, like three to

four feet [away]" and "pointed [the gun] right at [St. Pierre]."
St. Pierre pleaded with the defendant not to shoot him.
However, the defendant fired a shot.  St. Pierre believed that
he had been shot (although he was not).  The defendant then told
St. Pierre to "give [him his] side arm."  St. Pierre had his
hands up as the defendant came closer to him.  The defendant
pulled at St. Pierre's service weapon as St. Pierre tried to
shield it with his elbow.  The defendant pulled at the butt of
St. Pierre's service weapon twice with enough force to move St.
Pierre's body.  Because St. Pierre's service weapon was locked
in the holster, the defendant was unable to gain possession of
it.  The defendant then turned and fled through a backyard.
Gonzalez and St. Pierre were unable to locate the defendant.  A
black handgun was found in the yard at 1 Fairfield Street.

Discussion.  1.  ADW convictions.  The defendant argues
that his two convictions of ADW are duplicative, and thus
violate his constitutional right not to be twice placed in
jeopardy for the same offense.  He contends that the two
instances in which he pointed a firearm at St. Pierre were part
of a "single, brief, continuous and uninterrupted assault," and
therefore, only one conviction can stand.[4]  "Both the double

_____

[4] Prior to trial, the defendant filed a motion to dismiss
pursuant to Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982),
wherein he argued that the indictments were duplicative.  A
different judge denied the motion.  The defendant does not argue

jeopardy clause of the Fifth Amendment to the United States Constitution and Massachusetts common law prohibit the imposition of multiple punishments for the same offense." Commonwealth v. Dykens, 473 Mass. 635, 638 (2016). However, multiple convictions of the same or cognate offenses are permitted where they rest on separate and distinct acts. See, e.g., Commonwealth v. Gouse, 461 Mass. 787, 798-799 (2012), abrogated on other grounds by Guardado I, 491 Mass. 666. As the defendant notes, we look to what "'unit of prosecution' the Legislature intended as the punishable act for [ADW]." Dykens, supra at 640. We also consider the continuous offense doctrine, "which recognizes that certain criminal statutes are intended to punish just once for a continuing course of conduct, rather than for each and every discrete act comprising that course of conduct" (citation omitted). Id. Here, the defendant was indicted on three counts of ADW, and the prosecutor argued to the jury that the defendant committed those three counts by separately pointing the firearm at St. Pierre's leg, chest/torso, and head. The defendant was acquitted of the last count.[5]

_____

on appeal that the indictments should have been dismissed before trial, and so we do not reach that issue.

[5] The Commonwealth contends that this means the jury viewed the assault to the chest/torso and the assault to the head as a single continuous act. That does not necessarily follow. In

The crime of ADW is codified at G. L. c. 265, § 15B (b).
This section, under which the defendant was indicted, does not
explicitly state the unit of prosecution that the Legislature
intended as the punishable act.  However, § 15B (b) is set forth
in G. L. c. 265, the entirety of which describes crimes against
the person and focuses on the prevention of violence and injury
to individuals.  Generally, when the intent of the Legislature
in enacting criminal statutes is aimed at protecting the safety
of individuals, the number of victims determines the unit of
prosecution.  See Commonwealth v. Wassilie, 482 Mass. 562, 569
(2019).  See also Commonwealth v. Davis, 88 Mass. App. Ct. 143,
146 (2015).  However, the prosecution of distinct assaults on
the same person during a single episode is not barred by this
principle.  See Gouse, 461 Mass. at 798-799; Commonwealth v.
Vick, 454 Mass. 418, 435 (2009).  In fact, as was the case here,
the same or cognate offenses may be prosecuted on the basis of
separate and distinct acts against the same victim during the
same attack.  See, e.g., Commonwealth v. Jackson, 80 Mass. App.
Ct. 528, 530 (2011) (defendant committed two separate acts when
he punched victim in body and stomach and kicked her in legs).

As mentioned above, the record before us does not contain
the transcript of the discussion of the motions for required

_____

any event, nothing in our decision turns on this argument, and
therefore, we do not address it.

findings. As a result, we do not have the benefit of the reasoning of the trial judge as to whether a rational juror could have concluded that the evidence, in the light most favorable to the Commonwealth, supported two convictions of ADW. See Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979). Nor did the defendant move after trial, pursuant to Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995), for a judgment notwithstanding the verdict on one of the ADW convictions. Had he done so, the trial judge would have been required to "determine whether separate and distinct acts support[ed]" both ADW convictions. Commonwealth v. Suero, 465 Mass. 215, 222 (2013). In these circumstances, we focus on the incomplete record before us, which includes the transcript of St. Pierre's testimony and the parties' stipulation as to what occurred on the last day of trial.

We conclude that the jury had before it sufficient evidence to find that the defendant committed two separate and distinct acts of ADW. The first occurred when St. Pierre chased the defendant, a struggle ensued, the defendant pulled a handgun from his pants, and the defendant "push[ed] the rack back on the slide of [the] gun." As St. Pierre tried to grab the defendant from behind, the defendant "lowered his center of gravity" and St. Pierre saw the gun pointed at his left leg. This constellation of facts formed the basis for the first ADW

conviction.  See Commonwealth v. Buttimer, 482 Mass. 754, 767 (2019) (outlining elements of ADW).

The jury could have found that the second ADW, although occurring close in time to the first, was a separate and distinct act, and not a continuous, uninterrupted assault. After St. Pierre lost his balance and fell to his knees, he looked up and saw the defendant facing him and pointing a gun directly at him.  Unlike the first assault, where the defendant and St. Pierre were in a struggle, the defendant was now in a position of power as he stood over St. Pierre, who was on his knees.  The defendant then "stepped back a little bit, squared himself off, like three to four feet [away]" and "pointed [the gun] right at [St. Pierre]."  St. Pierre pleaded with the defendant not to shoot him; nonetheless, the defendant fired a shot.  The defendant demanded that St. Pierre give him his service weapon.  The defendant pulled at the butt of St. Pierre's weapon as the officer tried to shield it.[6]  Once St. Pierre was on the ground and in an inferior physical position to the defendant, the defendant had the time to contemplate his next steps.  When the struggle between the two ended with St. Pierre on the ground, the defendant could have fled.  He did

---

[6] The prosecutor highlighted which acts constituted each charge of ADW in his closing argument.

not.  Rather, the defendant aimed the gun at St. Pierre, as St. Pierre begged the defendant not to shoot him.  St. Pierre's pleas went unanswered as the defendant fired a shot and then tried to steal St. Pierre's service weapon.  There was a demonstrable "break" in the chain of events once the defendant was in a superior physical position to St. Pierre.  These facts formed the basis for the second ADW conviction.[7]  See, e.g., Jackson, 80 Mass. App. Ct. at 530.  Put another way, this evidence demonstrates that the jury could have found that the second assault was not part of a continuous offense, but rather was an independent course of conduct.  See Vick, 454 Mass. at 435 n.16, citing Commonwealth v. Maldonado, 429 Mass. 502, 509 (1999) (whether defendant's actions constitute separate and distinct acts or single crime is question of fact for jury).

Once the first assault occurred, the defendant was faced with a decision known as the proverbial "fork in the road."  See Hanna v. United States, 666 A.2d 845, 853 (D.C. 1995) (if during commission of crime, defendant "realize[s] that he [or she] has

---

[7] During deliberations, the jury asked a question about the facts to be applied to each charge.  This portion of the proceedings was not transcribed.  The parties agreed that the trial judge instructed the jury that they must be "specific" on each charge connecting it to each act as alleged.  The defendant does not argue that the jury were not instructed that the convictions had to be based on separate acts, see Commonwealth v. Kelly, 470 Mass. 682, 701-702 (2015), and so we do not reach that issue.

come to a fork in the road, and nevertheless decides to invade a different interest, then his [or her] successive intentions make him [or her] subject to cumulative punishment, and he [or she] must be treated as accepting that risk, whether in fact he [or she] knows of it or not" [citation omitted]).  In Commonwealth v. Horne, 466 Mass. 440 (2013), the Supreme Judicial Court held that an individual commits one single violation of G. L. c. 269, § 10 (a), when he possesses a rifle outside of his home for an uninterrupted period, but that a second violation occurs when he returns to his home and then goes back outside with the rifle. See id. at 452.  After the first crime was committed, the defendant in Horne was faced with a "fork in the road" decision -- rather than remain in his home, he left his home with a rifle, thereby committing a second crime.

Here, each ADW conviction was based on a discrete set of facts.  After the first assault, the circumstances during which the assault occurred abruptly changed with St. Pierre on the ground with his hands in the air; the hand-to-hand struggle had ended.  With the opportunity to reflect and make a choice, the defendant did not run.  Instead, he committed a second assault and attempted to steal St. Pierre's gun, a demonstration of proactive conduct unrelated to his initial flight from the police.  As a result, the defendant's convictions are not duplicative.  See Commonwealth v. Tracey, 50 Mass. App. Ct. 435,

443 (2000) (where defendant shot victim in arm and thirty seconds later fired two more shots, two convictions, one for each respective attack, affirmed).[8]  Cf. Orla O. v. Patience P., 100 Mass. App. Ct. 126, 129 (2021) (one continuous event over brief period of time failed to satisfy threshold of three separate acts of harassment within meaning of G. L. c. 258E). Additionally, although the proximity in time, manner, and place of the defendant's conduct is relevant, those factors are not dispositive.  See Dykens, 473 Mass. at 644.  Here, the assaults occurred close in time, with the same weapon, but we do not read G. L. c. 15B (b) to "reward [the defendant's] persistence." Dykens, supra.

2.  Firearm conviction.  After trial in this case, the Supreme Judicial Court held in Guardado I, 491 Mass. at 686-693,

---

[8] The defendant's reliance on Davis, 88 Mass. App. Ct. 143, is misplaced.  There, in a brief episode, the defendants robbed a clerk of money from the till and her necklace.  See id. at 144.  Because the acts were "part of one seamless" criminal episode, we concluded that there was one robbery, not two.  Id. at 147-148.  Unlike in Davis, here, there was a break in the action, which afforded the defendant the opportunity to make a choice; he chose to commit a second ADW.  Similarly, Commonwealth v. Traylor, 472 Mass. 260 (2015), is distinguishable.  There, the Supreme Judicial Court held that "to sustain multiple convictions [of wantonly or recklessly permitting bodily injury to a child], the Commonwealth must establish either separate and discrete instances in which a defendant engaged in the proscribed conduct, or that multiple victims were harmed as a result of a defendant's conduct."  Id. at 273.  Here, there were separate and discrete instances in which the defendant engaged in the proscribed conduct, ADW.

that the absence of licensure is an element of the offenses of unlawful possession of a firearm and unlawful possession of a loaded firearm. In Guardado II, 493 Mass. at 7-12, the court held that, although the Commonwealth presented insufficient evidence of absence of licensure at the original trial, the prohibition against double jeopardy did not bar a retrial.

After the issuance of Guardado II, the parties filed a joint status report in which they stated that based on the Guardado decisions, the defendant's firearm conviction must be vacated. The Commonwealth, relying on Guardado II, asks that the case be remanded for a new trial on the firearm conviction. The defendant contends that Guardado II was wrongly decided, and that State and Federal double jeopardy principles should bar a retrial.[9] On our independent review, we agree with the Commonwealth that Guardado II is controlling. We therefore vacate the conviction of carrying a firearm without a license as a level one armed career criminal, with the Commonwealth remaining free to retry the defendant if it so chooses. See Guardado II, 493 Mass. at 12.

Conclusion. The judgment of conviction of carrying a firearm without a license as a level one armed career criminal

---

[9] The defendant acknowledges that Guardado II requires that his firearm conviction be vacated and remanded for a new trial. He asks that we note his objection, and that he reserves his right to argue that double jeopardy bars retrial in the future.

is vacated and the verdict is set aside.  On the remaining charges of ADW, assault and battery on a police officer, and resisting arrest, the verdicts are affirmed, and the case is remanded to the Superior Court for reconsideration of the sentencing scheme.

<u>So ordered</u>.