WOLOHOJIAN, J.
*190 The defendant forcibly removed his two young children from the foster home where they had been placed by the Department of Children and Families (DCF). After a jury trial in which he represented himself, the defendant was convicted of breaking and entering with intent to commit a felony, G. L. c. 266, § 18 ; two counts of aggravated parental kidnapping, G. L. c. 265, § 26A ; assault and battery upon a person over sixty, G. L. c. 265, § 13K ; and battery on a child, G. L. c. 265, § 13A.[1] Raising numerous issues in this appeal, some pursuant to Commonwealth v. Moffett, 383 Mass. 201, 418 N.E.2d 585 (1981), the defendant challenges his convictions and the denial in part of his posttrial motion seeking portions of the audio recording of the trial.[2] We affirm.
*1083 Background. We summarize the undisputed facts, reserving additional *191 factual detail where necessary for our later discussion of the defendant's claims. While living in Vietnam, the defendant, a United States citizen, had two children with a Vietnamese woman: a girl, S.L., and a boy, P.L. The children's mother spent periods away and eventually moved to Switzerland. The defendant returned to the United States with the children and initially lived with members of his family in Utah. After he found work in Massachusetts, however, he moved here with the children in August 2011; they lived in a motel near his workplace. When the motel manager reported that the children (then ages nine and seven) were being left alone during the day, they were removed from the defendant's custody and placed in a foster home. Permanent custody was awarded to DCF on March 1, 2013. Subsequently, DCF moved to transfer custody to the mother in Switzerland; the motion was scheduled to be heard on May 29, 2013.
Nine days before that scheduled hearing, the defendant had a supervised visit with the children after which a DCF employee drove the children back to the foster home.[3] Despite the fact that the defendant was not permitted to meet with the children outside his permitted supervised visits or to know where they lived, the defendant followed them in his car, which he had packed with many items associated with a long trip.[4] ,[5] He then waited outside the foster home as the DCF employee delivered the children to the home. The boy came back outside to play and spotted the defendant; he ran back inside the house to alert the foster mother to the defendant's presence. The defendant gave chase and followed the boy onto the porch of the house, where the foster mother tried to block the defendant's further progress. The defendant pushed the sixty-three year old foster mother aside in order to enter the kitchen. He then grabbed the boy and pulled him through the house, out the front door, and across the lawn. After putting the boy in the car, the defendant also pushed the girl into the car. He then drove the children away. He was apprehended *192 late that night in Connecticut as a result of an Amber alert.
Discussion. 1. Breaking and entering charge. The defendant challenges his conviction *1084 of breaking and entering with the intent to commit the felony of aggravated parental kidnapping on four grounds. First, he contends that the judge erred in instructing the jury that a person's body could be an obstruction that, if removed, can constitute a "breaking." Second, he contends that the instructions did not clearly inform the jury that the defendant's felonious intent must have been formed by the time he broke and entered the home. Third, he argues that the jury should have been instructed on the lesser included offense of breaking and entering with the intent to commit the misdemeanor form of parental kidnapping, G. L. c. 265, § 26A. Fourth, he contends that the conviction must be reversed because the evidence indisputably showed that the occupant of the home had been put in fear, whereas the statute required that the Commonwealth prove no one was placed in fear. We address each argument in turn.
a. Obstruction instruction. As we have noted above, it was undisputed that the defendant pushed the foster mother aside before entering the kitchen of the foster home. But there was a dispute whether, before reaching the foster mother, the defendant had entered the porch of the house through an open or closed door. The foster mother testified that the defendant entered the home by pushing open a storm door. She then stiffly blocked him with her hand and said, "[Y]ou know you're not supposed to do this." By contrast, the defendant testified that he entered the house through a door that had been left open by P.L. as the boy ran into the house.
Without objection, the judge instructed the jury:
"Breaking has been defined as exerting physical force, even slight physical force, and thereby forcibly removing an obstruction and gaining entry.
"Another definition would be the moving in a significant manner of anything that bars the way into the building. Some examples would include breaking a window, forcing open a door or window. But there are some less obvious examples that also are considered to be break ins. Opening a closed door or opening a closed window is a break in, even if they are unlocked. Going in through an open window that is not intended for use as an entrance is also a break in. But going in through an unobstructed entrance, such as an open door, is not."
*193 Apparently focusing on the latter part of this definition, the deliberating jury posed the following questions to the judge: "Does a person constitute an obstruction, specifically in breaking?" and "[D]oes a verbal warning constitute an obstruction in breaking?" The judge responded to the jury that "Yes, a person's body may constitute an 'obstruction.' [And,] [n]o, a verbal warning may not. I am happy to answer any further questions, and/or repeat my instruction on the element of 'breaking.' " The defendant objected and now argues that it was error to instruct that a person's body may constitute an "obstruction" sufficient to constitute a "breaking."
Even assuming the instruction was erroneous as phrased (a matter we do not decide), reversal would not result because the two conflicting versions of the facts both constituted "breaking" into the house regardless of the foster mother's action. See Commonwealth v. Peruzzi, 15 Mass. App. Ct. 437, 445, 446 N.E.2d 117 (1983), quoting Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (error is nonprejudicial if we are "sure that the error did not influence the jury, or had but very slight effect"). If, on the one hand, the jury credited the foster mother's testimony that the defendant pushed the door open to enter the house, that act clearly constitutes "breaking." See *1085 Commonwealth v. Bolden, 470 Mass. 274, 280 n.3, 21 N.E.3d 150 (2014) ("the defendant committed the required break by opening the rear door to the dwelling and thereupon entering it"). If, on the other hand, the jury credited the defendant's testimony that the boy opened the door in order to seek safety from the defendant who was chasing him, that too constituted a breaking, albeit a constructive one. See Commonwealth v. Lowrey, 158 Mass. 18, 19, 32 N.E. 940 (1893) ("It was not necessary that [the defendant] should have touched the door if he procured himself to be let in by an accomplice and entered with felonious intent. He might have been convicted, even if the hand which he made use of was innocent, as in case of a servant or constable"); Commonwealth v. Labare, 11 Mass. App. Ct. 370, 374-375, 377-378, 416 N.E.2d 534 (1981) (entry obtained by trickery is constructive break). Compelling another to open a closed door so as to gain entry, whether by agreement, trickery, force or -- as here -- fear, is sufficient to constitute a breaking even though it is accomplished by indirect means. Thus, because under either version of events, the breaking was accomplished before the defendant reached the foster mother, it matters not whether her body constituted an additional impediment to entry.
b. Felonious intent instruction. For the first time on appeal, the defendant argues that the instructions did not clearly inform the *194 jury that the Commonwealth was required to prove that he held a felonious intent at the moment he entered the foster home. See Commonwealth v. Arias, 84 Mass. App. Ct. 454, 464, 997 N.E.2d 1200 (2013) (unpreserved objection to instruction is reviewed to determine whether error occurred and, if so, whether it "created a substantial risk of a miscarriage of justice"). "Our review of claimed jury instruction errors requires us to 'evaluate the instructions as a whole, looking for the interpretation a reasonable juror would place on the judge's words.' Commonwealth v. Trapp, 423 Mass. 356, 361 [668 N.E.2d 327], cert. denied, 519 U.S. 1045 [117 S.Ct. 618, 136 L.Ed.2d 542] (1996). 'We do not consider bits and pieces of the instructions in isolation.' Commonwealth v. Young, 461 Mass. 198, 207 [959 N.E.2d 943] (2012)." Id. at 465, 997 N.E.2d 1200.
Here, although it is true that at certain points the instructions did not explicitly tether the defendant's intent to the moment of breaking and entering, at numerous others the judge repeatedly made clear that the breaking and entering had to be accomplished "with the intent to commit a felony." Common understanding of the meaning of the preposition "with" was sufficient to inform the jury that the defendant's intent had to temporally accompany his act of breaking and entering. Moreover, the judge's instruction on specific intent made this point even more explicitly:
"The Commonwealth must prove specific intent on the part of the defendant. This requires you to make a decision about the defendant's state of mind at the time of the crime. In our everyday affairs we must often decide from the actions of others what their state of mind is. In this case you may examine the defendant's actions and words and all of the surrounding circumstances to help you determine what the defendant's intent was at the time." (Emphasis added.)
Taking the instructions as a whole, we perceive no risk that the jury would have failed to understand that the Commonwealth had to prove the defendant's felonious intent at the moment he broke and entered the house.
c. Lesser included offense. The defendant argues that the judge erred in refusing his request that the jury be instructed on the lesser included offense of breaking and entering with the intent to *1086 commit the misdemeanor form of parental kidnapping, G. L. c. 265, § 26A, in addition to the greater offense of breaking and entering with the intent to commit the felony of aggravated parental kidnapping, G. L. c. 265, § 26A. The difference in proof *195 between the two charges is that the greater offense requires that the child be taken or held "outside the commonwealth or under circumstances which expose the person taken or enticed from lawful custody to a risk which endangers his safety ...." Id.
" 'A judge is required to charge the jury concerning lesser included offenses if the evidence provides a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense.' Commonwealth v. Santo, 375 Mass. 299, 305 [376 N.E.2d 866] (1978). In determining whether any view of the evidence would support a conviction on a lesser included offense, 'all reasonable inferences must be resolved in favor of the defendant,' Commonwealth v. Vanderpool, 367 Mass. 743, 746 [328 N.E.2d 833] (1975). 'The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon.... That is a question within the exclusive province of the jury.' Commonwealth v. Campbell, 352 Mass. 387, 398 [226 N.E.2d 211] (1967).
"[H]owever, .... [e]ven when evidence is introduced that would justify conviction [of] a lesser included offense, the defendant is not entitled to an instruction thereupon unless the proof on the 'elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense.' United States v. Brischetto, 538 F.2d 208, 209 (8th Cir. 1976)."
Commonwealth v. Egerton, 396 Mass. 499, 503-504, 487 N.E.2d 481 (1986). Thus, the question here is whether there was sufficient dispute whether, at the moment he broke and entered, the defendant intended to take or hold the children outside Massachusetts or to expose them to a risk that endangered their safety such as to entitle him to an instruction on the lesser included offense.
There was not, even viewing -- as we must -- the evidence in the light most favorable to the defendant and resolving all inferences in his favor. Under G. L. c. 265, § 26A, the charge of felony aggravated kidnapping may be supported either if the person kidnapped is taken or held out of the Commonwealth or if the person's safety and well-being is likely endangered by the kidnapping. Here, both elements are present.
First, the defendant admitted that his intent at the moment he entered the foster home was to take his children with him. The *196 items he had packed in his car indicated that he intended to take them out of the Commonwealth. Indeed, he ended up taking them to Connecticut, and the jury could infer that his intent ab initio was to take them out of the Commonwealth.
Second, his own testimony was sufficient to prove that he knowingly took his children "under circumstances which expose[d] [them] ... to a risk which endanger[ed] [their] safety." G. L. c. 265, § 26A. The children had been removed from the defendant's care for their safety, he was allowed only supervised visits with them, and he knew that he was not allowed to know the location of the foster home where they lived, let alone to visit it. He also knew his acts would trigger a regional manhunt. Knowing that there was the possibility of being apprehended while on the road, he nonetheless exposed the children to a potentially dangerous encounter with law enforcement. See State v. Bradford, 839 P.2d 866, 871 (Utah App. Ct. 1992) (noting "inherent volatility of many roadside *1087 police encounters"). The defendant's own testimony placed the kidnapping in the felony category of G. L. c. 265, § 26A. Therefore, the judge did not err in declining to instruct the jury on the lesser included offense.
d. Proof of no fear. General Laws c. 266, § 18, provides, in relevant part: "Whoever, in the night time, enters a dwelling house without breaking, or breaks and enters in the day time a building, ... with intent to commit a felony, no person lawfully therein being put in fear, shall be punished ...." The defendant argues that the phrase "no person lawfully therein being put in fear" is an essential element the Commonwealth was required to prove affirmatively. Because the evidence showed that the children and foster mother were in fact put in fear, it follows, the defendant argues, that the Commonwealth failed to prove the crime.[6] In essence, the defendant's argument is that, by proving more than was required, the Commonwealth failed to prove enough.
It would be unreasonable to construe the statute in the way the defendant asks us to do. See Attorney Gen. v. School Comm. of Essex, 387 Mass. 326, 336, 439 N.E.2d 770 (1982) ("We will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable. We assume the Legislature intended *197 to act reasonably"). The phrase "no person lawfully therein being put in fear" is not an element of the crime but, rather, a means by which to distinguish § 18 from the more serious crime in § 17 of the same chapter.[7] As such, it is a "nonelement-creating differentiation." Commonwealth v. Muir, 84 Mass. App. Ct. 635, 640, 999 N.E.2d 1098 (2013). See id., citing Commonwealth v. Christian, 430 Mass. 552, 556, 722 N.E.2d 416 (2000) ("not being armed" is not essential element of unarmed robbery statute, G. L. c. 265, § 19 (b ). "The 'not being armed' language in the statute merely differentiates it from the enhanced crime of armed robbery, which occurs when the defendant carries out the robbery with a dangerous weapon"). Our conclusion in this regard is consistent with our previous decisions upholding convictions under G. L. c. 266, § 18, even where the victims were placed in fear. See Commonwealth v. Moore, 50 Mass. App. Ct. 730, 732, 734, 741 N.E.2d 86 (2001) ; Commonwealth v. Assad, 19 Mass. App. Ct. 1007, 1009 (1985).
2. Parental kidnapping. The defendant also challenges on two grounds his convictions of parental kidnapping in violation of G. L. c. 265, § 26A. First, he argues that he was entitled to a necessity defense. Second, he argues that the Commonwealth failed to prove that he lacked lawful authority to take his children. We are unpersuaded by both arguments.
a. Necessity defense. The defense of necessity must be allowed when the defendant presents "at least some evidence at trial," Commonwealth v. Kendall, 451 Mass. 10, 15, 883 N.E.2d 269 (2008), to support all four of the following:
"(1) the defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his action will be effective as the direct cause *1088 of abating the danger; (3) there is [no] legal alternative which will be effective in abating the danger; and (4) the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue."
Commonwealth v. Pike, 428 Mass. 393, 400, 701 N.E.2d 951 (1998), quoting Commonwealth v. Hood, 389 Mass. 581, 591, 452 N.E.2d 188 (1983). In determining whether the defendant had met this burden, we review the *198 evidence in the light most favorable to him, see Kendall, supra at 11, 883 N.E.2d 269, and treat his testimony, "no matter how incredible ..., as true," and resolve all reasonable inferences in his favor. Commonwealth v. Magadini, 474 Mass. 593, 600, 52 N.E.3d 1041 (2016), quoting Pike, supra at 395, 701 N.E.2d 951. Even viewed in this light, the evidence did not meet the required standard.
The defendant's claim of necessity was founded on his testimony that he believed the children suffered psychologically and emotionally while in DCF custody,[8] that his daughter would be required to undergo brain surgery he thought was medically ill-advised, and that the children might return to Vietnam if custody were granted to the mother.[9] None of these perceived dangers, even were we to assume for the purpose of argument that they were certain and imminent, could effectively be cured only by forcefully removing the children from their foster home. Instead, they were all susceptible to abatement through legal alternatives. See Pike, 428 Mass. at 401, 701 N.E.2d 951. Thus, the defendant failed to raise "a reasonable doubt as to the availability" of legal "alternatives that likely would have been considered by a reasonable person in a similar situation." Magadini, 474 Mass. at 600, 601, 52 N.E.3d 1041. Indeed, the defendant's own testimony demonstrated that alternatives were available (and that he was pursuing them) in the pending custody proceedings.
b. Sufficiency argument. The defendant also argues that the Commonwealth failed to prove beyond a reasonable doubt that he lacked authority to take the children. Viewing the evidence in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 676-677, 393 N.E.2d 370 (1979), we disagree.
"In the context of a parental kidnapping charge, the Commonwealth can prove that an individual lacks lawful authority over his child in a number of ways -- by operation of a range of *199 statutes or by court order." Commonwealth v. Gonzalez, 462 Mass. 459, 463-464, 969 N.E.2d 655 (2012). Here, the Commonwealth introduced two "Care and Protection DCF Commitment Mittimus" orders issued by a judge of the Juvenile Court Department declaring that the children were in DCF's custody until adulthood. The jury also heard testimony that the defendant was permitted only limited, supervised visits with his children, and that he was not *1089 allowed to know where they lived. Nothing more was required to prove that that the defendant took his children without lawful authority.
3. Excluded evidence. The defendant contends that the trial judge improperly prevented him from presenting evidence to show that the custody orders issued from the Juvenile Court were the product of fraud and therefore void. Had the jury been allowed to consider the invalidity of the custody orders, he reasons, they could have found that the defendant retained rightful custody of his children and thus did not violate the law in taking them. A judge has "substantial discretion in deciding whether evidence is relevant." Commonwealth v. Tobin, 392 Mass. 604, 613, 467 N.E.2d 826 (1984). The defendant must make "a clear showing" that the judge abused his discretion or committed a clear error by reaching "a decision that clearly transcends 'the outer bounds of ... discretion.' " Commonwealth v. Doyle, 67 Mass. App. Ct. 846, 863, 858 N.E.2d 1098 (2006), quoting Commonwealth v. Bonds, 445 Mass. 821, 835, 840 N.E.2d 939 (2006).
The judge did not abuse his discretion in determining that the defendant's collateral attack on the custody orders had no place in his criminal trial. See Commonwealth v. Avalos, 454 Mass. 1, 10, 906 N.E.2d 987 (2009) (no abuse of discretion in excluding issues that would have created trial-within-a-trial on collateral issues). As the judge noted, an alleged fraud in the Juvenile Court could and should more properly be addressed in the pending appeal of the Juvenile Court judge's decision.[10]
4. Summonsing witnesses. The defendant argues that the trial judge disclaimed the court's authority to procure the defendant's children as witnesses, and refused to offer assistance in obtaining *200 their presence.[11] In reality, the defendant did not properly move to request the judge's help.
During the hearing on the defendant's motion to dismiss, the defendant claimed that "agents of the Commonwealth ... intentionally deprived" him of his children as witnesses, by allowing his children to be transferred to Switzerland. The judge stated that he was unaware of his authority to order the children's return but instructed the defendant to file a motion supporting his request. The defendant never made such a motion, which (had it been filed) would have allowed the judge to consider the merits of the issue. See Blazo v. Superior Court, 366 Mass. 141, 145, 315 N.E.2d 857 (1974) ("It is right that an indigent should have to establish need for his witnesses who are to be summoned at public cost; he may not demand excessive and therefore pointless expenditure. Cf. Commonwealth v. Dirring, 354 Mass. 523, 238 N.E.2d 508 [1968] ; Draper v. Washington, 372 U.S. 487, 495-496, 83 S.Ct. 774, 9 L.Ed.2d 899 [1963]. There should be no serious difficulty in the defendant's coming forward with his reasons justifying the particular summonses, or in the judge's reaching an objective decision on the matter").
*1090 The judge was not required to rule on the defendant's naked assertion during the hearing on an unrelated motion, nor was he required to consider a matter that was not properly before him.
5. Audio recordings of the trial. Finally, the defendant argues that he should have been granted the court reporter's complete audio room recordings, so as to ensure the accuracy of the entire written transcript. "[A] judge has the authority to order the court reporter to provide designated persons with access to the room recording, for instance where the court reporter has failed timely to prepare a transcript or where the recording may be needed to resolve a dispute regarding the accuracy of the transcript." Commonwealth v. Winfield, 464 Mass. 672, 680, 985 N.E.2d 86 (2013).
Because the court reporter already had prepared the written trial transcripts from the room recordings, the motion judge required the defendant to specify any material inaccuracies in the transcripts that access to the audio recording could resolve. The defendant identified five instances in the trial transcripts where he believed that, based on his recollection of the events, a transcription error had occurred. The judge found that the defendant made *201 a sufficient showing of possible error and materiality for three of the five instances, and allowed him those portions of the audio room recordings. We discern no abuse of discretion with respect to the remaining two. As to the first, the defendant's assertion of a witness's missing answers after an objection was, as the judge found, a "bare and nonspecific assertion" not supported in the context of the transcript. As to the second, even if the recording had revealed that the foster mother's testimony was that she had been punched, rather than pushed (as was transcribed), the difference was nonprejudicial.
In addition, contrary to the defendant's assertion that he has a right to the full and complete transcript, the Supreme Judicial Court recently noted that "it is well established that the right to a record of sufficient completeness 'does not translate automatically into a complete verbatim transcript.' " Matter of M.C., 481 Mass. 336, 345, 115 N.E.3d 546 (2019), quoting Commonwealth v. Imbert, 479 Mass. 575, 578, 97 N.E.3d 335 (2018). "[E]ven if a [party] asserts an appellate claim which requires recourse to a transcript, he is not necessarily entitled to the full transcript." Matter of M.C., supra, quoting Bundy v. Wilson, 815 F.2d 125, 135 (1st Cir. 1987). There was no error. For these reasons, the judgments are affirmed.
So ordered.

The defendant was acquitted of the charges of assault with intent to commit a felony, G. L. c. 265, § 29, and reckless endangerment of a child, G. L. c. 265, § 13L.

Defense counsel submitted the defendant's main brief with a summary of additional issues the defendant intended to raise in his Moffett brief. The defendant, however, never submitted a Moffett brief and, therefore, the following claims of error are waived: (1) the defendant's waiver of his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and art. 12 of the Declaration of Rights was invalid; (2) the defendant was denied his right to discovery regarding evidence seized from his computers, cell phone, and digital storage devices; (3) the defendant was entitled to an instruction, in relation to the reckless endangerment charge, that he had a legal responsibility to act to protect his children and was justified in removing them from their foster home; (4) the defendant was deprived of a fair trial and due process through false and misleading testimony by government witnesses; (5) due process was violated when the prosecutor and defense attorney completed the pretrial conference report without the defendant; (6) fraud and other "crimes" by the police and DCF vitiated the custody orders; (7) due process was violated when standby counsel was not permitted to state the grounds for objection; (8) the court that issued the custody orders lacked jurisdiction, and therefore the custody orders are void or voidable; (9) due process was violated because the defendant did not have reasonable and adequate time to prepare for trial; (10) there were due process and excessive bail violations where the prosecutor's supposed false claims placed bail beyond the defendant's reach; (11) the judge abused his discretion by failing to help the defendant gain access to the jail's law library; and (12) due process was violated when the defendant's children were removed to a foreign country and thus were unavailable to testify.

The defendant was permitted a single one-hour supervised visit, every other week, at the Weymouth DCF center.

These included clothes, coolers, a tent, sleeping bags, blankets, a pillow, an inflatable mattress, a box containing hundreds of legal documents, numerous pieces of photography and videography equipment, and electronics including cell phones, hard drives, and some iPads.

An open screen shot on one of the iPads in the car showed a map with driving directions to Pocono Lake in Pennsylvania.

Because the issue was not raised below, we review to determine whether there was error and, if so, whether it resulted in a substantial risk of a miscarriage of justice. The alleged error is an issue of statutory interpretation and, therefore, is "a pure question of law." Commonwealth v. Cintolo, 415 Mass. 358, 359, 613 N.E.2d 509 (1993).

General Laws c. 266, § 17, states, in relevant part: "Whoever, in the night time, enters without breaking, or breaks and enters in the day time, a building, ... with intent to commit a felony, the owner or any other person lawfully therein being put in fear, shall be punished by imprisonment in the state prison for not more than ten years."

The defendant presented no objective support in the record for his belief. See Commonwealth v. O'Kane, 53 Mass. App. Ct. 466, 470, 760 N.E.2d 291 (2001) ("[T]he exigent danger must have been present in an objective sense"). Moreover, although the defendant testified that, while in DCF custody, his son began "urinating and defecating in his pants," we cannot reasonably infer that the child's incontinence reflected a "clear and imminent danger."

The defendant testified that he planned to produce a documentary while in hiding to expose the injustices done to his family. He believed that the film, combined with the awareness generated by a region-wide manhunt, would raise public support for his efforts and thereby prevent authorities from incarcerating him, separating his children from him, and performing unnecessary surgery on his daughter.

In addition, even if erroneous, a court order must be obeyed, and until it is reversed by orderly review, it is to be respected. See United States v. United Mine Workers of Am., 330 U.S. 258, 294, 67 S.Ct. 677, 91 L.Ed. 884 (1947). "[O]nly where the court lacks jurisdiction to make an order or where the order is transparently invalid on its face may a party ignore a court order and attempt to evade sanctions by litigating the validity of the underlying order." Oakham Sand & Gravel Corp. v. Oakham, 54 Mass. App. Ct. 80, 87, 763 N.E.2d 529 (2002).

The defendant's appellant brief inaccurately refers to the judge's "hurried conclusion" that he had "no authority to order" the children's appearance. The defendant fails to note that the judge twice asked the defendant to put the request in a motion.